[L. A. No. 15528. In Bank.—May 19, 1937.]

IVA GILBERTSON FOSTER, Appellant, v. JOHN MORRELL FOSTER, Respondent.

Walter F. Haas, Stanley F. Maurseth, Gerald E. Kerrin and Maurseth & Kerrin for Appellant.

Gurney E. Newlin and Michael G. Luddy for Respondent.

CURTIS, J.—This is an appeal from a judgment of the Superior Court of Los Angeles County in favor of respondent, refusing to grant petitioner's application for the sole and exclusive custody of the minor adopted child of petitioner and respondent, which custody had formerly been granted by the Circuit Court in and for the County of Minnehaha, South Dakota, Second Judicial District, in the divorce action between petitioner and respondent, to petitioner for three months of each year and to respondent for nine months of each year. This controversy over the custody of Whitney Foster, the adopted child of the parties, has been before this court on two previous occasions, once on prohibition proceedings (*Foster* v. *Superior Court*, 4 Cal. (2d) 125 [47 Pac. (2d) 701]), and later on *supersedeas* proceedings. (*Foster* v. *Foster*, 5 Cal. (2d) 669 [55 Pac. (2d) 1175].) It has also been before the District Court of Appeal on prohibition proceedings. (*Foster* v. *Superior Court*, 4 Cal. App. (2d) 466 [41 Pac. (2d) 187].) The following is a short *résumé* of the legal steps taken in the controversy: John Morrell Foster, respondent herein, and Iva Gilbertson Foster, appellant herein, were divorced in South Dakota, and the decree was made and entered on March 1, 1933. This decree of the Circuit Court in and for the County of Minnehaha, South Dakota, Second Judicial District (hereinafter referred to as the South Dakota decree) provided that Whitney Foster, who had been adopted by the parties shortly after his birth in May, 1927, should remain in the care and custody of his foster father from September 10th of each year until June 10th of the following year, and that he should remain in the custody of his foster mother from June 10th until September 10th of each year. In the early part of January, 1931, Whitney had been taken to Arizona for his health by

reason of an asthmatic condition existing at that time, where he remained until June, 1931. The complaint in the divorce action was filed by John Morrell Foster on July 22, 1931, and in November, 1931, Mrs. Foster, to whom the temporary custody of Whitney had been awarded pending the divorce decree, secured an order of the South Dakota court in which the divorce action was pending permitting her to remove Whitney from South Dakota to Phoenix, Arizona. He remained in Phoenix, Arizona, under the care of a Mrs. Della Whitman from November, 1931, until April 10, 1933, with the result that at the time of the entry of the divorce decree on March 1, 1933, he was physically absent from the jurisdiction of the South Dakota court. In June, 1933, appellant moved to California and established her residence in the city of Beverly Hills, bringing Whitney with her for the three months' period designated in the divorce decree. He was returned to his father at Sioux Falls, South Dakota, in September, 1933, and in June, 1934, returned to his mother at Beverly Hills. In August, 1934, Mrs. Foster wrote to respondent, stating that Whitney, by reason of a sinus infection, had been under the care of two doctors who believed that his health would be improved by continued residence in southern California, and requesting permission to keep the boy with her. Upon this permission being refused, Mrs. Foster petitioned the superior court of Los Angeles, for the sole and exclusive custody of the child, and obtained an order for the continued temporary custody of the child. John Morrell Foster thereupon filed an answer setting up the South Dakota decree, and also a cross-complaint praying for the sole and exclusive custody of the child. The petition was based principally upon the contention that the climate of South Dakota, with its severe changes in temperature and its dust storms, is very detrimental to the child's health; that each time she has received the child from Sioux Falls, South Dakota, he has been run down physically, and that each time she has returned the child to his father after three months in the warm, equable climate of southern California under the care of competent physicians, he has been in splendid physical condition. She alleged in her petition that Whitney was suffering from chronic bronchitis, asthma, and chronic ethmoid sinusitis, and that the treatments which he was receiving for such ailments must necessarily be continued in

the mild climate of southern California in order that a lasting beneficial effect might be had upon his health and in order ultimately to effect a permanent cure.

Upon the termination of the hearing, at which several doctors corroborated the allegations of appellant's petition as to Whitney's physical condition, and at which depositions of two doctors of Sioux Falls, South Dakota, two specialists of Los Angeles, and a specialist of Chicago were introduced by respondent, the court on December 12, 1934, made, signed and filed with the clerk of the court a written memorandum opinion in favor of the father, continuing in effect the South Dakota decree. After the filing of the written memorandum opinion, and prior to the signing of findings of facts and conclusions of law, and before the signing or entry of any judgment, the respondent sought an order to transfer to him the temporary custody of the minor child which theretofore had been given to his mother. The effect of such an order would have been to transfer to respondent the custody of the minor child during the pendency of any appeal from the judgment. The appellant, therefore, sought in the District Court of Appeal, Second Appellate District, Division Two, a writ of prohibition to prohibit the trial court from making an order changing the temporary custody of the child. This writ was denied by the District Court of Appeal on February 8, 1935, upon the ground that, as an appeal from the judgment to be entered in the action would necessarily be taken to the Supreme Court, this court was the proper court to which to make application for the writ. (*Foster* v. *Foster*, 4 Cal. App. (2d) 466 [41 Pac. (2d) 187].) The application was thereafter made to the Supreme Court on February 11, 1935, and on July 30, 1935, the writ of prohibition was duly issued by the Supreme Court restraining the Superior Court of Los Angeles County from making or ordering the execution of any judgment or decree which should have the effect of placing Whitney Foster beyond the operation of process of the court prior to the final determination of the action. On September 5, 1935, findings of facts and conclusions of law and judgment were filed in favor of respondent refusing to modify the decree of the South Dakota court. On September 8, 1935, appellant perfected her appeal to this court. On September 16, 1935, appellant filed a petition for a writ of *supersedeas* in this court, praying that the Superior Court

of the County of Los Angeles be restrained from enforcing the terms of said judgment with reference to the custody of the child during the pendency of the appeal by appellant. On March 24, 1936, this writ was denied upon the ground that such writ was unnecessary as a perfected appeal automatically constituted a stay of proceedings and precluded the trial court from interfering with the custody of the child as it existed at the time of the appeal, and that as the appellant was entitled to the custody of the child upon the date of the entry of the judgment under the previous order of the court granting her temporary custody, appellant was entitled to retain custody of the child until the final determination of the judgment. (*Foster* v. *Foster*, 5 Cal. (2d) 669 [55 Pac. (2d) 1175].) Thereafter, on July 7, 1936, respondent upon notice to appellant moved to dismiss the appeal or affirm the judgment. Respondent's brief on the merits was already on file at the time said motion was made. On the hearing of said motion, the court upon the consent of both parties ordered the motion and the cause upon its merits transferred to the ready for submission docket. The effect of this order was a denial of the motion and a direction that the case will be submitted and disposed of as the regular business of the court will permit. (*Dos Pueblos Ranch & Improvement Co.* v. *Ellis, ante*, p. 617 [67 Pac. (2d) 340].) However, to avoid all uncertainty in the matter, the motion to dismiss or affirm is denied. Accordingly the appeal is now before us on its merits.

Three main questions are presented upon this appeal.

1. Was the trial court correct in holding that, in the absence of a change of circumstances or conditions affecting the welfare of the minor child, the decree of the court of another state was entitled on principles of comity to full faith and credit in this state?

2. Did the South Dakota court retain jurisdiction to determine the whole subject-matter of the divorce action which included the custody of the minor child of the parties, despite the absence of the child from the state of South Dakota under permissive order of the South Dakota court at the time of the entry of the decree, when both parties were domiciled within the jurisdiction of the court at the time of the commencement of the action and the defendant had been personally served and appeared?

3. Were the findings of the trial court upon the hearing of the petition for the sole and exclusive custody of the child by petitioner supported by substantial evidence?

The answer to each of these three questions must be an emphatic and unequivocal affirmative. No other conclusion is possible under the authorities cited, and the record presented in this case. We shall discuss each of the questions in the order above set out.

■ The jurisdiction of the Superior Court of the County of Los Angeles to make an order modifying the South Dakota decree cannot be challenged upon the ground that the decree of South Dakota was *res judicata* and could not be changed.

■ It is well recognized that a decree of a court in this state awarding the custody of a minor child of divorced parents to either party in a divorce proceeding has no permanent finality and that it is later subject to change and modification by the same court. This power is expressly reserved to that court by section 138 of the Civil Code. This rule that custody orders are subject to modification applies not only to such orders made and entered by courts of this state, but also to such former orders of courts of other states. As was said in *Anthony* v. *Tarpley,* 45 Cal. App. 72, 79 [187 Pac. 779] : "The child being within this jurisdiction, the courts of this state are not precluded by any judgment or order of a sister state from inquiring into and determining in its own behalf what are the best interests of the child." ■ It is well established, however, that such original decree is final in the sense that it is not possible for the dissatisfied party to keep the courts continually occupied with suits seeking to change the former order of the court with reference to the custody of the child, and that until some change of circumstances arises which makes a modification of the former order of custody advisable from the point of view of the welfare of the child, the court will give effect to the former order and will refuse to make any modification of such order. In *Olson* v. *Olson,* 95 Cal. App. 594, 597 [272 Pac. 1113], which involved a custody decree made and entered in this state, is to be found the following language: "There can be no doubt where jurisdiction to grant a divorce and award the custody of the minor children of the marriage once attaches, that jurisdiction is, under our statute, a continuing one, so that the power to amend, modify or annul an order of custody

for the welfare of the children as existing conditions may demand, ever after remains. But this does not mean the parties to such litigation may after a court has once heard evidence upon the subject of their fitness to act and ruled upon the question, immediately again invoke the powers of the court to have it inquire into the same or other facts existing at the time of or prior to the former decree. Such holding would lay a foundation for interminable and vexatious litigation. The rule is stated to be that to justify a modification there must be a change of circumstances arising after the original decree is entered, or at least a showing that the facts were unknown to the party urging them at the time of the prior order, and could not with due diligence have been ascertained. (19 Cor. Jur. 350.)''

This same rule that former decrees of custody may be modified only upon a showing of change of circumstances arising subsequent to the entry of the former decree applies with equal force to the question of the finality of the decree of custody of a sister state made and entered in a divorce proceeding. It has been so held in the cases of *In re Wenman,* 33 Cal. App. 592 [165 Pac. 1024] ; *In re Marshall,* 100 Cal. App. 284 [279 Pac. 834] ; *In re Livingston,* 108 Cal. App. 716 [292 Pac. 285] ; *Titcomb* v. *Superior Court,* 220 Cal. 34 [29 Pac. (2d) 206]. The case of *In re Livingston, supra,* quotes with approval from *In re Marshall, supra,* and says: ''The quotation just set forth . . . indicates the rule generally prevailing that a decree of a court of one state having jurisdiction, relating to the custody of minor children is under the doctrine of comity prevailing among sister states and, subject of course to the right of the parties to show a change of circumstances or conditions, entitled to recognition in another state.'' This same case also quotes with approval from a case note appearing in 20 American Law Reports at page 815, where the authorities on the subject are collected, as follows: '' 'With some variation of statement, and an occasional intimation to the contrary, it is established by the great weight of authority that in the absence of fraud or want of jurisdiction, affecting its validity, a decree of divorce awarding the custody of a child of the marriage must be given full force and effect in other states as to the right to the custody of the child at the time and under the circumstances of its rendition; but that such a decree has no con-

trolling effect in another state as to facts and conditions arising subsequently to the date of the decree; and the courts of the latter state may in proper proceedings, award the custody otherwise upon proof of matters subsequent to the decree which justify the change in the interest of the child.' "
(See, also, note, 72 A. L. R. 442.)

■ The trial court in the instant case, by an express finding, indicated that it felt itself bound by the doctrine of comity to give recognition to the decree of the South Dakota court and that in the absence of a change of circumstances and conditions affecting the welfare of the child, the decree of the South Dakota court was entitled to full faith and credit in this state. Having determined, after hearing all the evidence adduced by both parties, that there had been no change of conditions affecting the welfare of the child, the trial court in the instant case refused to modify the decree of custody of the South Dakota court, and refused to grant to appellant the sole and exclusive custody of the minor child in contravention of the decree of the South Daktoa court. It is evident that in so doing the trial court was supported by ample authority.

■ We do not wish to be understood as holding that "the change of circumstance" rule is an absolutely iron-clad rule, and that there can be no possible exception to it. It is perhaps possible to conceive of a case in which, despite the fact that there was apparently no change of circumstances, nevertheless, the welfare of the child might require that the previous order of custody be changed. (*Bogardus* v. *Bogardus,* 102 Cal. App. 503 [283 Pac. 127].) It is also possible to conceive of some theoretical case in which some fact, secret and hidden at the time of the entry of the former judgment, would in the interest of the welfare of the child, justify a court in modifying the former order of custody despite the fact that there had been no actual change of circumstances since the entry of the former order. Under the authority of *Olson* v. *Olson, supra,* the court in such a situation would we think be justified in modifying the order. That this would be true is indicated by the language of *Titcomb* v. *Superior Court,* 220 Cal. 34, 39 [29 Pac. (2d) 206], wherein it is said: "The paramount concern in awarding custody as between parents is the welfare of the child, who is not the property of his parents. If it appears that the circumstances upon which

the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, but the decree of the other state is never a bar to inquiry as to the best interest of the child.'' However, such a case would be a most unusual one. It is more speculative than real, and such a case is not presented by the facts of the instant case.

The fact that the minor child of the parties was at the time of the entry of the South Dakota decree affecting his custody actually present in Arizona for his health under a permissive order of the court of South Dakota did not deprive the South Dakota court of jurisdiction to make a valid and effective decree affecting his custody which would, in the absence of changed conditions, be effective in a sister state. A statement in the case of *Warren* v. *Warren,* 127 Cal. App. 231, 240 [15 Pac. (2d) 556], lifted from the text, might possibly seem to support the contention that the absence of a child from the state at the time of the entry of the decree, deprives the court of jurisdiction to make an order affecting its custody. The statement must, of course, be considered in connection with the facts of that case, and the facts therein present a situation wholly dissimilar to the situation in the present case. In that case, the wife, who with her husband was a resident of the state of California, went to Nevada for the sole purpose of securing a divorce, and the children whose custody was awarded by the Nevada court to the wife, were never within the state of Nevada during the entire period of time. Obviously, the decree awarding the custody of the children to the wife was a nullity. In the instant case, as previously pointed out, both parties to the divorce action had been domiciled for several years prior to the commencement of the divorce action within the jurisdiction of the court where the divorce action was instituted, and were so domiciled at the time of the commencement of the action. The defendant in the action was personally served and both parties were personally present at the trial and within the state at the time of the entry of the decree. This being so, the South Dakota court had jurisdiction over the custody of the child who was only temporarily absent from the state. (*State* v. *Rhoades,* 29 Wash. 61 [69 Pac. 389]; *Anderson* v. *Anderson,* 74 W. Va. 124 [81 S. E. 706]. See, also, 2 So. Cal. Law Review, 302.) It cannot, therefore, be successfully argued that the

court of this state was at liberty to investigate the question of the custody of the child *de novo* by reason of the fact that the decree of South Dakota in so far as it concerned the custody of the minor child was void and ineffective.

An application for a modification of an award of custody is addressed to the sound legal discretion of the trial court, and its discretion will not be disturbed on appeal unless the record presents a clear case of an abuse of that discretion. (*Bancroft* v. *Bancroft*, 178 Cal. 352 [173 Pac. 582]; *Dickerson* v. *Dickerson*, 108 Cal. 351, 352 [41 Pac. 475]; *Baldwin* v. *Baldwin*, 111 Cal. App. 148 [295 Pac. 93].) An examination of the record in the instant case does not reveal an abuse of discretion on the part of the trial court, but demonstrates beyond a shadow of a doubt that this is merely a case of a conflict in the evidence. It is true appellant made a strong showing to the effect that Whitney was in fact suffering from chronic bronchitis, chronic ethmoid sinusitis and asthma, and that his health would in all probability be improved by continued residence in the warm, mild climate of southern California. This was, however, met by a strong counter-showing on the part of the respondent that aside from the asthma from which the child has suffered since infancy, the child has suffered only the usual complaints to which children in general are subject, such as colds and measles, and by evidence that the asthmatic condition was due to a sensitivity to certain proteins, pollens, and epidermals, which could be controlled as effectively in South Dakota as in southern California. The appellant herself admits in her brief that there is a conflict in the evidence "on the question of the child's health, surroundings, care and general welfare". She attempts, however, to discredit the testimony of the witnesses in favor of the respondent's position by pointing out that they were probably motivated by self-interest, and were unworthy of belief. The credibility of witnesses is a question for the determination of the trial court. As was said in *Baker* v. *Baker*, 9 Cal. App. 737, 746 [100 Pac. 892, 897], "It involves only a waste of time to undertake to demonstrate to an appellate court in a case in which there exists at least a substantial conflict in the evidence that the testimony offered by the party against whom these findings have been made by the court below should be accepted in preference to that from which such findings have been deduced."

.. We are satisfied from a careful examination of the record that the findings of the trial court to the effect ''that said infant, Whitney Foster, is not now and never·has been afflicted with chronic bronchitis or chronic ethmoid sinusitis'', but now is, and since at least March 1, 1933, has been a normal, healthy child, except that he is sensitive to certain proteins, pollens and epidermals which bring about infrequent asthmatic attacks, wherever he has been; that during the time the said infant was in the custody of the respondent from on or about the 1st day of September, 1933, to on or about the 5th day of June, 1934, said Whitney Foster was in good health except for a hard cold, an attack of measles and two asthmatic attacks, and that from on or about the 5th day of June, 1934, to the time .of the trial of the action, during which time Whitney Foster was in the custody of appellant, he has suffered two attacks of cold and two asthmatic attacks; that any ailments from which Whitney Foster has suffered since on or about the 1st day of March, 1933 [the date of the divorce decree] were of a temporary and minor nature only; that there has been no change in any matters of a substantial or material nature affecting the welfare of said child since the making, entry and filing of the South Dakota decree, are supported by substantial evidence, and they in turn support the judgment.

The record shows that both foster parents are wealthy and are financially able to give to their adopted child all the material advantages which wealth can afford. It also shows that both parents are genuinely fond of the boy and interested in his welfare, and that both are willing to make personal sacrifices if his best interests require it. The evidence likewise shows that the boy is genuinely fond of both his parents and is happy in the company of each of them. The record also shows that the boy is a likable, well-behaved child, and except for the slight handicap due to the asthmatic condition, is a normal, healthy child. There is no doubt that in the custody of either of the parents he will receive intelligent care and training.

We do not believe that the introduction in evidence in their entirety of exemplified copies of the judicial records of the South Dakota court pertaining to the divorce action between the parties was prejudicial error. Appellant insists that only that portion of the divorce decree actually award-

ing the custody of the child should have been admitted in this proceeding, and that the introduction of the findings of facts and conclusions of law, as well as an order served upon appellant at the time of the filing of the divorce complaint, restraining her from destroying furniture in the home of the parties, from running up bills at stores, and from removing Whitney from the jurisdiction of the South Dakota court, was intended solely for the purpose of prejudicing the trial court, and should not have been admitted in evidence. We cannot agree with this contention in so far as it applies to the findings of fact and conclusions of law of the South Dakota court. In order for the court to determine whether or not there had been any change of circumstances subsequent to the entry of the former decree, it was imperative that the court should understand the conditions as they existed at the time of the entry of the decree. The case of *Crater* v. *Crater*, 135 Cal. 633 [67 Pac. 1049], lays down as the proper rule for a trial court in considering a modification of a custody decree the following: ''The court in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child.'' (See, also, *Simmons* v. *Simmons*, 22 Cal. App. 448, 452 [134 Pac. 791].) It is obvious, we think, that this is the correct rule. In deciding a matter so vital to the parents and to the welfare of the child, it is important that the trial court in order to make as wise a decision as possible, should have as complete a picture of the whole background of the child as possible,—the financial condition of the parents, their interests, their morals, and their dispositions, as well as any other factor which might aid the court in determining the probabilities of either parent furnishing a happy, harmonious home for the child. In a question involving so intimately human relationships, the trial court has a delicate as well as a difficult problem to solve, and it may be that if some of the factors are missing, he may not arrive at the best solution. The facts established by the former decree are necessarily a part of such picture, and should be made known to the trial court. While it seems to us that no good purpose was served by the introduction of the restraining order, nevertheless, in view of the fact that this case was heard and decided by a judge, we are of the opinion

that its introduction was not prejudicial as the trial judge undoubtedly gave to this evidence the slight weight it deserved.

██ It is not necessary to discuss the question of whether or not Judge Keetch erred in refusing to disqualify Judge Smith, the trial judge who heard this case, for that question is moot. Appellant's motion, made under the provisions of section 170 of the Code of Civil Procedure, at a time when there was considerable controversy over the issuance by the trial judge of the temporary custody order, prayed that Judge Smith be disqualified from passing upon any matter pertaining to the temporary custody of the minor child, Whitney Foster, or any other matter or proceeding whatever, *except the making, signing and filing of findings of facts and conclusions of law and judgment herein.* The trial judge, subsequent to said motion, did not find it necessary to pass upon any motions or take any action of any kind other than to sign and file the findings of facts and conclusions of law and judgment herein. This being so, the question of whether or not the trial judge should have been disqualified from passing on intermediate orders is now wholly immaterial.

Under the law and the evidence presented in the instant case, the court was justified in refusing to make an order which would have the effect of modifying the decree of the South Dakota court.

The judgment is affirmed. ·

Shenk, J., Langdon, J., Seawell, J., and Thompson, J., concurred.

Rehearing denied.