JERE B. HORSLEY, Appellant, v. EDYTHE HORSLEY,
Respondent.

Gandy & Hurd and C. V. Caldwell for Appellant.

Jerrell Babb for Respondent.

DORAN, J.—This is an appeal from an order of the Superior Court of Los Angeles County awarding custody of the two minor children of the parties to the mother during the school months of the year and to the appellant father during the summer months.  For a number of years prior to the making of the order appealed from custody had been in the father.

The parties were married in 1934.  The two children, a boy and a girl, were aged about 9 and 10 years, respectively, at the time·of the hearing which resulted in the order appealed from.  In 1937 the father brought an action for divorce in the Superior Court of Los Angeles County upon the ground of desertion.  At the trial of the action the mother dismissed her cross-complaint, and after hearing evidence, the trial court

denied plaintiff father a divorce. Thereafter the father secured a divorce in Nevada, remarried in 1940, and now resides with his present wife in Los Angeles.

The first order of custody shown in the record, made March 15, 1938, and based upon a recommendation of a court investigator, provided "that the father continue with the custody . . . that the mother may visit the children every Sunday morning . . . provided some third party is in the home at the time." Prior thereto, apparently, the children had been in the father's custody. At the time said order was made, or shortly thereafter, the father placed the children in a home known as the California Kiddie Home.

In August, 1939, the mother made an application for modification, asserting that the plaintiff "is now living in the City of Reno, Nevada. Children are now in a public institution." It was then ordered that the father continue with the custody and that the children remain in the California Kiddie Home until after further order, and that the parents might visit the children in accordance with the rules and regulations of that home.

In April, 1944, plaintiff father having sought modification of the existing custody order, the matter first came before the trial judge who made the order herein appealed from. It was at this time ordered that the children be placed in the Maude Booth Home in Los Angeles; that the parents alternate in having the children with them at such times as the children were permitted to leave school, and that "for this purpose the parents have joint custody of said children . . . without prejudice of amendment as to the custody of said children after a period of six months. . . ." In July, 1945, a further order was made that "custody of the children is now awarded to plaintiff until September 4, 1945, without prejudice."

On August 31, 1945, after hearing, upon application of the mother, the order herein complained of was made. This order provided that the mother "shall have the custody . . . during the school session months of each year, and that the plaintiff shall have custody of said children during the summer months . . . and this arrangement shall continue until the further order of the court."

It is contended in substance that the last-mentioned order is erroneous, in that by previous orders it had been conclusively determined that the father was a fit person and that the welfare of the children would be best served by placing them

in the father's custody; that no showing was made which would warrant a change in custody; and that from the evidence adduced it affirmatively appears that the best interests of the children require that custody be continued in the father.

▇ The parties hereto were before the same trial judge on two previous occasions in connection with the same matter. It is well settled that orders relating to the custody and care of minors in such circumstances are not final. The question on each and every occasion is always addressed to the discretion of the trial court. And unless that discretion is abused, the action will not be disturbed on appeal. The burden in that regard is on appellant. ▇ In the within appeal, a review of the record reveals no reason for disturbing the judgment of the trial court.

The judgment is therefore affirmed.

York, P. J., concurred.

WHITE, J.—I dissent.

For a proper determination of whether the trial court in the instant case abused the judicial discretion reposed in it, I deem it advisable to here set forth in more detail than appears in the majority opinion, the factual background of this litigation as reflected by the record in the three proceedings wherein the parties were before the trial judge who made the order here complained of.

The evidence adduced at these hearings has been presented in the form of a settled statement. From such evidence it appears that after the unsuccessful termination of his divorce suit in California the father procured a divorce in Nevada in 1940, remarried, and has resided for some years in the Eagle Rock District of Los Angeles, where he is purchasing a home. The father testified that he was maintaining the children at his home with a housekeeper, but some time in 1938 placed them in the California Kiddie Home; that he and his second wife took the children out and had them at their home for dinner every Sunday; that the children were very fond of the present Mrs. Horsley. With reference to the condition of the girl, who had suffered from infantile paralysis, a doctor on the staff of the Orthopedic Hospital testified, in part: "She is ten years old now and is due to mature. Her epilepsy can be made much worse from this if she is not kept in a proper environment and kept away from excitement. She is where she

could either become very much better or very much worse. . . . The child should have due opportunity to use that hand (partially paralyzed) or she will always be left-handed. A child with the hand that she has should be home where the father can do it. . . .''

A consulting psychologist testified that the children appeared happy with their father and his present wife; that the defendant mother was ''constrained, nervous and irritable on two distinct occasions,'' in the presence of the children. The superintendent of the Kiddie Home testified that the father was cooperative; that the mother was not; that her attitude ''is often very belligerent''; that she was critical of the children; that she took them to ''a very upsettting war picture.''

At the hearing in May, 1945, the husband introduced testimony of two social workers to the effect that the children were happy in their father's home; that the children seemed to prefer the father to the mother, and that the mother was not in a position to offer the children the advantages provided by their father. It also appeared that the mother had resided at about nine different addresses since June, 1944.

In August, 1945, in the proceeding which gave rise to this appeal, before the same judge who had heard the controversy at two previous hearings, the mother testified, in support of her application, that she now lived on Valley Boulevard in Puente, where she had a three-room apartment, and her own furniture; situated on 19 acres near the home of the owners thereof; ''There is no fence around my back yard, but the entire nineteen acres is fenced. They have two children of their own, the boy is the exact age of my little girl, and the other is three months older than Jerry. Both of their children are boys. They are very nice children. Their mother is a school teacher, and their father works. He has been working in pictures in Hollywood, and they are both nice people. The mother is teaching in the Puente School this winter. I have to be caretaker of the place while they are both gone. I am in position to give aid to my children and help them with their school studies. I formerly taught school. I am not tied up, with the exception of a few chores and certain days that I do work for these people. . . . It is a country school. The children are taken on a bus. . . . There is no separate room for the children to sleep in. I guess we would all have to sleep in the living room, but I could make a separate place for the boy . . . in the room that is off the kitchen . . . no furniture

in it. . . . His bed would be folded up during the day. . . . I have that large room and the kitchen and the bathroom, and dressing room. . . ."

At the same hearing the father testified that he was buying the place in which they lived, about five blocks from a school; that the children go to church and Sunday-school; that the boy went every week to the nearby playground and belonged to the Boy Scout cubs. His present wife testified to the congenial atmosphere in the home, and this was corroborated by an intimate friend.

At the conclusion of this hearing the trial court said, in part: ". . . I have talked to the children. *Of course, their preference is to be with their father and step-mother: they so expressed themselves, just as they did before, there is no change.* I always will have to remember that Mrs. Horsley is the mother of the children. So the matter will be submitted." (Emphasis added.) Following such submission, the court made the order herein appealed from.

By an unbroken line of authorities it is established that once jurisdiction attaches to grant a divorce and award custody of the minor children of the marriage, our statute provides that jurisdiction is continuing, and there ever after remains the power to amend, modify or annul an award of custody as existing conditions demand (*Foster* v. *Foster,* 8 Cal.2d 719, 726 [68 P.2d 719]). But section 138 of the Civil Code provides that in the making or modification of any order of custody the court is to be guided by the following considerations: "By what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare; and if the child is of a sufficient age to form an intelligent preference, the court may consider that preference in determining the question.

"As between parents adversely claiming the custody, neither parent is entitled to it as of right; but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father."

Because of this expressed legislative intent, the courts have uniformly held that the paramount concern in such a proceeding is the welfare and best interest of the child, and while recognizing the manifest intention of the Legislature to confide to trial courts, in the disposition of the minor children of the parties to a divorce action, a very extensive discretion,

appellate courts have nevertheless consistently held that the discretion with which trial courts are invested in such matters is a legal discretion, the exercise of which can be neither capricious nor arbitrary, but which must reflect the use of discriminating judgment within the bounds of reason and controlled by legal principles, the application of which will, in cases like the one now before us, tend toward the conservation of the highest and best interests of such minor children, keeping always in mind "what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare. . . ." (Civ. Code, § 138, subd. 1.)

To avoid the child's welfare being constantly unsettled and disturbed by recurring changes of his custody, to say nothing of the necessity of avoiding interminable and vexatious litigation, the courts have held that while a showing of "changed circumstances" is not an essential prerequisite to the making of an order changing the custody of a minor child, the trial court must exercise the broad legal discretion reposed in it upon evidence from which it appears that the best interest and welfare of the child will be conserved or enhanced by any action taken. It has therefore been ordained as a rule of practice, in every proceeding to modify a previously made order awarding custody of a minor child, that the burden is upon the moving party to satisfy the court that new facts, considered in connection with those formerly established (*Crater* v. *Crater*, 135 Cal. 633, 634 [67 P. 1049]), justify the modification (*Booth* v. *Booth*, 69 Cal.App.2d 496, 500 [159 P.2d 93]; *Prouty* v. *Prouty*, 16 Cal.2d 190, 193 [105 P.2d 295]). I am not unmindful that, on appeal, the party who seeks a reversal of the order modifying or refusing to modify a previous custody award must carry the burden of showing that the trial court abused its wide but legal discretion to make such order for the minor's custody, or modify or vacate the same, in the light of what may to such court seem necessary or proper for the best interest of the child (Civ. Code, § 138, subd. 2; *Foster* v. *Foster*, 8 Cal.2d 719, 730 [68 P.2d 719]; *Peterson* v. *Peterson*, 64 Cal.App.2d 631 [149 P.2d 206]; *Kelly* v. *Kelly*, 75 Cal.App.2d 408 [171 P.2d 95]).

But, so far as the evidence goes in the case at bar, there is not one iota to indicate that the children did not have the best of care from their father. In fact, all the evidence indicates they did have such care. Respondent mother, except for peri-

ods of visitation, has never had the actual custody of the children since the original order giving their custody to appellant father in 1938. All presumptions being in favor of the previous orders awarding and continuing custody in the father, the burden was on respondent to prove that appellant father is so unfit, or that other circumstances or considerations have intervened, which reasonably indicate that the best interests and welfare of the children would be endangered unless an order be made for change of custody, and it must be further shown by competent and convincing evidence that the best interests and welfare of the children will be directly enhanced or promoted by the change (*Johnson* v. *Johnson,* 72 Cal.App.2d 721, 724 [165 P.2d 552]). I search the record in vain for any evidence indicating that appellant is or ever was unfit to care for the children or that their best interests or welfare will either be promoted or enhanced by giving their custody to respondent mother.

The only ground urged in respondent's affidavit upon which the order to show cause herein was issued is that she "has rented a 3-room house with modern bath facilities and toilet. Said place is in the county of Los Angeles and is equipped for raising chickens and garden. Defendant owns her own furniture for the house. Said house is near a good school which begins September 17, 1945. School bus picks children up right at the house and returns them. Defendant is well established in her new location. Defendant took said location on the advice of her attorney and is now well equipped to properly take care of the two children involved in this action. Environment for the children is excellent." These facts, slightly elaborated as to detail, were relied upon by respondent at the hearing in the court below. From her testimony it appears that in the three-room apartment there is one large room which could be used as a sleeping room for the mother and minor daughter. Respondent proposed to put the boy in a room used as a kitchen wherein there was no furniture for use by him in conjunction with his sleeping room. As heretofore indicated, respondent was to act as a caretaker for the house occupied by the owner of the nineteen acres upon which respondent was permitted to reside in the three-room apartment as aforesaid in return for the performance by her of the duties of caretaker of the entire premises.

I have heretofore narrated the testimony given at the hearing and will not now repeat it. Suffice it to say, that appellant

father's affection for and devotion to the children was not challenged. The children themselves, when interviewed by the trial judge outside the presence of the parties, expressed, as they had in the past, a desire to remain with their father. Disinterested witnesses testified as to the happiness and contentment of the children when with their father. As to the girl, Jean, who suffered an attack of infantile paralysis in 1935, it was shown that she was at the time of the hearing and prior thereto had been receiving treatments at the Orthopedic Hospital in Los Angeles since shortly after she suffered the attack. Who would take the child to the hospital for treatments while the mother was performing her work as caretaker of the premises upon which she lived was not made to appear.

A reading of the record convinces me that the trial judge abused his discretion in making the order appealed from, because no evidence was presented to him that the best interests and welfare of the children would be enhanced or promoted by the change in custody as ordered, but on the contrary, the evidence tended strongly to indicate that not only would the children's lives be unsettled, but their best interests and welfare would be adversely affected thereby.

The order appealed from should be reversed.