[Civ. No. 13538.   First Dist., Div. Two.   June 1, 1949.]

Guardianship of LINDA SVOBODA, a Minor.   ARTHUR C. SVOBODA, Appellant, v. GLADYS L. HURST, Respondent.

C. Fenton Nichols and Francis McCarthy for Appellant.

Guy A. Ciocca for Respondent.

GOODELL, J.—This appeal was taken by Arthur C. Svoboda, the father of Linda Svoboda, a minor, from an order granting letters of guardianship of her person to respondent Gladys L. Hurst, her mother.

Appellant and respondent were married in Illinois in 1938. In 1945, respondent sued appellant in the Superior Court of Cook County, Illinois, where they lived, and on August 31, 1945, was awarded a divorce on the ground of extreme and repeated cruelty. The decree awarded respondent the custody of Linda, the daughter of the spouses, then aged 3 years, with leave to respondent to maintain the child with her and/or her parents out of the State of Illinois; it granted leave to appellant to see and take out the child at all reasonable times, and to have her during the summer months. Respondent with Linda left Illinois in late November, 1945, and came to Culver City, California, where they stayed with respondent's sister until early in 1946. On March 29, 1946, respondent married Roy M. Hurst, a sergeant in the Army, in Fresno where he was stationed, and they lived there, with Linda as one of the family. In September, 1946, he was transferred and they moved to San Anselmo, where they resided at the time of the hearing.

On being discharged from the Navy in December, 1945, appellant returned home and in February, 1946, instituted proceedings in Chicago to change the divorce decree so as to give him sole custody of Linda. The Illinois court appointed a master to take the evidence and ordered that appellant should have the minor from July 1 to August 31, 1946. Respondent, then in California, was represented before the master by counsel who had represented her on the divorce, but she did not testify before the master either in person or by deposition. The master reported that custody should be changed to appellant.

On October 21, while the master's report was under submission to the Illinois court, respondent filed her petition for guardianship. Admittedly she then knew that the matter was under submission in Illinois.

On October 31, 1946, the Illinois court confirmed the master's report and findings, held that the welfare and best

interest of the minor would be best served by placing her in appellant's custody, and so ordered.

Appellant does not contend that the Illinois order was res judicata (see *Foster* v. *Foster*, 8 Cal.2d 719, 726 [68 P.2d 719]) but admits that the courts of California have the power to appoint a guardian, and thus award custody, *contra* to the Illinois order, provided changed circumstances are proved. He claims, however, that the inquiry in California into such change should have been limited to the period of four months from the date of the Illinois order, October 31, 1946, to the Marin County hearing, February 27, 1947, and that no such change was shown. He claims, also, that our courts should not countenance the filing of guardianship proceedings while the question of custody is under submission to the court of a sister state having jurisdiction, and before which the parties have appeared and produced witnesses.

█   Appellant's primary contention is ''that the decree of a sister state is entitled, under principles of comity, to full faith and credit in this State in the absence of a showing that since the entry thereof appellant'' has become an unfit person to have such custody. With respect to this contention the rule is stated in *Titcomb* v. *Superior Court*, 220 Cal. 34, 39 [29 P.2d 206], as follows: ''If it appears that the circumstances upon which the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, but the decree of the other state is never a bar to inquiry as to the best interests of the child. (*In re Wenman*, 33 Cal.App. 592 [165 P. 1024].)''

█   The principal question before the court in the guardianship proceeding was whether the respondent was a fit and proper person to have the custody of the minor *at the time of the hearing* (*Munson* v. *Munson*, 27 Cal.2d 659, 665 [166 P.2d 268]). In pursuing that inquiry the court went back over the entire 15-month period during which she and Linda had been in California. Aside from respondent and her husband, six witnesses testified for respondent, and one after another they traced her living conditions, and Linda's, from their arrival in California in November, 1945, to the time of the hearing in February, 1947.

Starting with their arrival respondent's sister testified that they lived with her in Culver City (and that respondent had to go out and work) until about March, when respondent went to Fresno and married Hurst. Another witness, a Mrs. Merrill, also covered this period. The testimony of a third

witness embraced the time from respondent's marriage in March, until September, during which time she and her husband and Linda lived in Fresno. Two witnesses testified respecting the period from September, 1946, when the Hursts moved to San Anselmo, to the time of the hearing. All five witnesses were housewives and mothers and they testified that respondent was a good housekeeper and took good maternal care of Linda. The sixth witness was a soldier friend of Hurst, stationed with him, whose testimony covered the whole period from early in 1946, through the Hursts' marriage and residence in Fresno, their removal to San Anselmo and their residence there, right down to the time of the hearing. All this testimony was decidedly favorable to respondent and none of it was contradicted.

It is self-evident that in any inquiry into a change of circumstances the marital status of a woman and the support of herself and a dependent child are of primary importance. At the guardianship hearing the following facts were clearly proved: The Svoboda divorce decree awarded no alimony. After the divorce respondent had to work to support herself. While appellant was in the service he made an allotment of $42 a month for the child, which terminated on January 10, 1946 (after which time he sent nothing for Linda's support) and from then until her marriage respondent worked to support the child as well as herself. Respondent's marriage on March 29, 1946, changed all this. From then on she did not have to work, but devoted her time to caring for the household and the child, and the child was supported by her stepfather, as one of his family. That these facts impressed the court is indicated by his remark at the end of the hearing: "She had no husband then and she had no home" the reference of course being to the time when she alone was the breadwinner.

If the hearing had been confined, as appellant claims it should have been, to the four months subsequent to the Illinois order, much of this testimony, which is of the highest importance, would have been shut out. As it was, the court got a connected, and practically continuous, picture of the situation of respondent and Linda for well over a year immediately before the hearing.

Moreover, the *date* of the Illinois order meant practically nothing. Appellant's answer filed herein alleged that after his discharge from the service on December 10, 1945, he made an investigation respecting respondent's living condi-

tions *during the time he was away* and as a result thereof filed his petition in Illinois for change of custody. Hence the issue in the Illinois proceeding and the evidence therein concerned matters occurring in 1945, and perhaps earlier, while respondent and Linda were in Illinois, although the master's hearing was not held until July and August of 1946. To again quote the Titcomb case, "the circumstances upon which the prior order" *was based* were those of 1945, and long antedated October 31, 1946, when the order was *dated*.

For these reasons we must hold that appellant's contention that "The trial court erroneously admitted in evidence testimony relating to periods of time antedating the order of the Illinois court finding respondent an unfit person . . . and awarding custody to appellant" cannot be sustained.

■ We are also convinced that appellant's claim that the evidence before the Illinois court was the same as, or similar to, that before the California court must be rejected. The entire Illinois record was offered in evidence but the court rejected all except the master's report and findings and the order of the court. The testimony before the master was strenuously pressed on the court on the claim that it showed that the Illinois court had before it evidence similar to that given here. It would have shown but a small and rather inconsequential part of it. Mrs. Merrill, who testified here, was on vacation in Chicago during the master's hearing and her testimony there was not materially different from her testimony here. Her contact with respondent was during the period from November 1945, when respondent and Linda came to Culver City, to the following March when they moved to Fresno. It was during that period that respondent had to work, just as she had to work while in Illinois. Respondent's economic status had not then changed. Mrs. Merrill's testimony brought before the Illinois tribunal no facts respecting respondent's marriage and the stepfather's support of Linda, or the new family's situation after the marriage and could not have done so. No other witness in Chicago testified respecting respondent's or Linda's living conditions in California. The marriage to Hurst was not brought out in the Illinois testimony, although it was called to the court's attention by counsel before the Illinois order was signed. Aside from the fact that both hearings were concerned ultimately with the custody of Linda, they had nothing in common save Mrs. Merrill's testimony. The Marin County hearing, however, was based entirely on changed circumstances, since it included

in its scope living conditions, environment, financial condition and marital status of respondent after she and Linda left Illinois, and for four months after the Illinois order of October 31, 1946.

On the theory that the Illinois order of October 31, 1946, had adjudicated appellant to be fit to have the minor's custody, respondent was asked if she knew of anything that had happened since that date to indicate that he was unfit. She answered in the negative, which is understandable since she had been in California for 11 months when the Illinois order was made and had never returned to Illinois. The father's fitness may be conceded. The mother's fitness was found by the California court, and "other things being equal," Linda being of tender years, respondent still had the statutory preference (Civ. Code, § 138). Moreover, "what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare" (Civ. Code, § 138; Titcomb case, *supra*) at the time of the hearing (Munson case, *supra*) was the question before the court.

Appellant strenuously urges that the rejection of the Illinois transcript was error. It may have been admissible (see *Foster* v. *Foster*, 8 Cal.2d 719, 731-733 [68 P.2d 719], although there the admission of a transcript was not involved), but we are satisfied that if error, its rejection was not prejudicial for the reason that the master's report and findings and the Illinois order which were admitted summarized to a considerable extent the testimony, and the court accepted the Illinois orders at their full face value. (See *Foster* v. *Foster*, *supra*, pp. 731-733.) This appears from the court's remarks when appellant's counsel urged that the Illinois transcript would show that the testimony was similar at both hearings. The court stated: "I am conceding that these two persons named appeared and testified at the hearing, and all they could testify about, obviously, is what had occurred up to that time . . ." The court was referring to *one* person's testimony at Chicago, not two, for Mrs. Merrill was the only one who testified at both hearings. The court said further: "I, of course, have admitted in evidence the Referee's findings and also the Judge's order, based on those findings for the purpose of comparing it with such testimony as might be produced here, to determine whether or not circumstances have changed . . . I am giving the Referee there perhaps more credit than you are willing to allow him, namely, that he made a finding based on sufficient evidence that she was

not a fit and proper person at that time . . ." Elsewhere the court remarked: ". . . I did hear the finding of the Referee that the home of the Svobodas was very nice, and that he was a proper and fit person to have the custody of the child, and that she was not. That is all. Now then, having before me a finding she was not then a fit and proper person, I have been listening to evidence to show that she was a fit and proper person. In other words, that her circumstances have changed, even if her ex-husband's have not." Following that, when counsel argued with respect to the Illinois evidence on which the order of October 31 was based the court made the significant statement already quoted, that "She had no husband then and she had no home."

The record contains an abundance of testimony of circumstances definitely and radically changed between 1945 (*on which the Illinois order of October 31, 1946 was based*) and the guardianship hearing in February, 1947.

Appellant relies on *In re Wenman*, 33 Cal.App. 592 [165 P. 1024]; *In re Marshall*, 100 Cal.App. 284 [279 P. 834]; *In re Livingston*, 108 Cal.App. 716 [292 P. 285], and *Guardianship of Cameron*, 66 Cal.App.2d 884 [153 P.2d 385]. The first three were proceedings in *habeas corpus*. In the Wenman, Marshall and Livingston cases the minors had been abducted or kidnapped from a sister state and brought to California in violation of the order of the court of the outside state. The writ was sought and granted in each case on the application of the person having legal custody in the outside state, and in none of them was such person's unfitness or any change of circumstances shown. In the Cameron case the minor was brought to California under the permission of the court in Colorado, and while here the mother sought guardianship. There was no showing of the father's unfitness or of a change of circumstances and the opinion shows that in the trial court the decision (which was reversed) had been made because the views of the California judge differed from those of the Colorado judge on the subject of the custody of children. None of the cases is in point. Linda was brought to California under the express permission of the Illinois court and there was no abduction or kidnapping feature in the case.

"The appointment of a guardian for a minor is a matter lying within the sound discretion of the court and the conclusion reached will not be set aside on appeal unless it is shown to have been reached as a result of an abuse of discretion" (*Guardianship of McCoy*, 46 Cal.App.2d 494, 496 [116

P.2d 103], citing *Estate of Allen*, 162 Cal. 625, 629 [124 P. 237]). No abuse of discretion appears in this record.

Appellant's contention respecting the findings and the formal order based thereon need not be discussed at any length. The court's order of March 17, 1947, ''That letters of guardianship be issued as prayed for'' contained no direction that findings should be drawn or an order made based on findings. It was from that order that this appeal was taken, and the various points urged by appellant have been considered as if no findings, or the later and formal order of April 10, 1947, had been made.

The order is affirmed.

Nourse, P. J., and Dooling, J., concurred.