[Civ. No. 3794. Fourth Dist. Mar. 30, 1950.]

GLADYS B. HUE, Appellant, v. ROLLIN PICKFORD, JR., Respondent.

Matt Goldstein for Appellant.

Aynesworth & Hayhurst for Respondent.

MUSSELL, J.—This is an appeal from a judgment for defendant in an action brought by plaintiff to obtain the custody of the two minor children of the parties. The sole question involved is whether the trial court abused its discretion in awarding the custody of the two children to the defendant, with the right of plaintiff to have them visit her from 9 o'clock a. m. to 6 o'clock p. m. on the first and third Saturdays of each month.

Plaintiff and defendant were married in the city of Fresno on June 30, 1940, and lived together until on or about April 9, 1947. Two sons were born the issue of the marriage: Jeffrey

Otis Pickford and James Ladd Pickford, who were respectively
6½ and 3½ years old at the time of the trial of the action
on October 14, 1948.

The marital difficulties between the plaintiff and defendant
apparently commenced in the fall of 1946 when plaintiff
absented herself from the family home frequently at night
and on week ends.  She was emotionally upset and consulted
a psychiatrist concerning her family troubles.  Shortly there-
after she told defendant that she had had ''an affair'' with
a man and was going to continue her conduct.  In this con-
nection, Marie Howard, plaintiff's aunt, testified that the
plaintiff stated to her that she was having ''an affair'' with
one Ed Hue (the present husband of plaintiff) but that she
did not want the Pickfords to hear about it; that she had
been going to a psychiatrist to try to work out her problems.
The witness further testified that plaintiff was insisting on
a divorce and that some time during the first part of February,
1947, plaintiff stated that she was going to leave and upon
being asked what arrangements she had made to have the
children taken care of, stated ''that she had made none; that
it was not her obligation; that it was Rollin's responsibility
to have the children taken care of.''

In spite of the efforts of defendant to prevent plaintiff from
leaving and breaking up the home, plaintiff stated to the
defendant that she was leaving and she did in fact leave on
or about April 9, 1947.

Two days later a property settlement agreement was
entered into between the parties wherein it was agreed that
the defendant be given the custody and control of the minor
children for a period of one year, with reasonable rights of
visitation allowed to the plaintiff and it was agreed that plain-
tiff have the right to apply to the court for custody during
school vacation periods.  Under these conditions, the children
were left with their father, and plaintiff, on or about April
29, 1947, went to Reno, Nevada, and there instituted an action
for divorce.  Mental cruelty was alleged as a cause of action
and in the decree obtained on June 11, 1947, there was no
adjudication as to the rights of the parties to the custody of
the children.

On June 12, 1947, plaintiff returned to Fresno and on June
21, 1947, went to the Pickford home to see the children and
an altercation there occurred between the plaintiff and Mrs.
Pickford, mother of the defendant.  Mrs. Pickford called

Marie Howard and she, with plaintiff's mother, went to the Pickford home where a stormy scene occurred, which was participated in by plaintiff, plaintiff's mother and plaintiff's aunt and during which the plaintiff took the youngest child and started out the door. Plaintiff's mother took the child from her and the plaintiff left.

On September 15, 1947, the plaintiff married H. Edwin Hue, and purchased a home with the funds which she had received as part of her settlement with her husband. On September 24th, plaintiff sent a letter to defendant asking that he give her the custody of the children. Her request was refused and this action was filed.

On or about April 14, 1948, plaintiff and defendant and their respective counsel, in lieu of a judgment of the superior court, submitted the determination of the temporary custody of the children to an arbitration by Mr. John Gregg, a mutual friend of the family, who awarded the custody of the children to the defendant. Thereafter the matter came on regularly for hearing before the trial judge, whose judgment is here under attack, and after hearing, a temporary order was made awarding the custody of the children to the defendant.

At the trial of the instant action plaintiff produced a number of witnesses, who testified to the fitness of plaintiff as a mother and to the fitness of her home as a proper place in which to rear the children. All of these witnesses were well acquainted with the parties and stated, in substance, that the plaintiff was a very devoted mother, took excellent care of the children and that her home conditions were of the best.

Witnesses testified on behalf of the defendant that the children were being well cared for in the home of the defendant and in fact, plaintiff, at all times during the hearing, conceded that the home furnished by defendant for his children was physically adequate and that he and the persons occupying it were fine people.

Plaintiff took the witness stand in her own behalf and denied having had any improper relations with H. Edwin Hue prior to their marriage. At the conclusion of the trial, in response to a question put to her as to a conversation had with her husband, plaintiff made a lengthy statement, characterized in defendant's brief as a dramatic attempt to turn the tide of battle in her favor. The statement thus given was directed to her attorney and defendant, and in it, among other things, plaintiff admitted that she had told her husband that she left the children with him for the reason that she did not want to

have them until she could prove herself to be a stable, normal, even tempered woman. She stated that the defendant had hounded and pounded her and literally driven her crazy during the last two months that she was at the home; that the defendant stood in her room at night when she was asleep and stood there until she awakened; that he "grabbed her arms in the bed and twisted them and literally drove her with his accusations that she was an evil woman."

That this statement had some influence on the court's decision was apparent from the remarks of the court to the effect that he was undecided what to do with the case until the plaintiff took the witness stand. The trial court found, among other things, that prior to the execution of the agreement as to the custody of the children the plaintiff had left her home and left the children with the defendant, stating it was defendant's responsibility to look after them and provide a home for them and that she wasn't going to bind the children to her and it was the defendant's duty to take care of them; that thereupon, the defendant, with plaintiff's knowledge and approval, took the children with him to reside and live with the children's grandparents in the city of Fresno; that in said home the children were kept and maintained and are being kept and maintained in excellent conditions for their normal development and growth and moral, secular and religious education; that said home is a fit and proper home for said children; that for at least two years last past the plaintiff has been emotionally unstable and unbalanced and is not and would not be as competent and desirable to care for, maintain, lead, train, educate and develop said children as the defendant and the persons with whom he is keeping said children; that her emotional instability was still apparent during the court hearing; that plaintiff, about two years ago, through her emotional instability, sought to and did obtain outside companionship with H. Edwin Hue; that their relationship was of a clandestine nature and unfitted her to continue to have the custody and control of the said children; that her relationships with said H. Edwin Hue were such that immediately after she obtained her divorce in Nevada she met the said H. Edwin Hue and they were soon thereafter married and continued to live together since said date.

The judgment entered is attacked as an abuse of the trial court's discretion.

■ The policy of the State of California with respect to the custody of children has been determined by section 138 of the Civil Code, which provides generally that in actions for divorce during the minority of any of the children of the marriage, the court may make such order for the custody, care, education and support of such minor children as may seem necessary or proper and may at any time modify or vacate the same. The court is to be guided by what appears to be for the best interests of the children in respect to their temporal and their mental and moral welfare—and as between parents adversely claiming the custody, neither parent is entitled to it as a right; but other things being equal, if the child is of tender years, it should be given to the mother; if it is of an age to require education and preparation for labor and business, then to the father.

In the instant action the trial court has found that the best interests of the children in respect to their temporal and mental and moral welfare call for the award of their custody to the defendant. The findings of the court and the award of custody find substantial support in the record. The trial court had an opportunity to observe the character and qualities of the respective parties on the witness stand and to determine the fitness of each to have the custody of and to pass upon the other matters relating to the welfare of the children.

This court has heretofore held, in *Di Giorgio* v. *Di Giorgio,* 87 Cal.App.2d 576, 580 [197 P.2d 213], that in dealing with questions relating to the care, custody and education of minor children of divorced parents, there is confided to the trial court a very extensive discretion in adapting its orders to varying circumstances and conditions with the view to always serve the highest and best interests of the children and to retain jurisdiction over its orders in this respect. A reviewing court does not have the power to interfere with the exercise of discretion except in the clearest instance of its manifest abuse. (Citing cases.) To the same effect is the decision in *Prouty* v. *Prouty,* 16 Cal.2d 190, 191 [105 P.2d 295].

In *Foster* v. *Foster,* 8 Cal.2d 719, 732 [68 P.2d 719], it was stated:

''In deciding a matter so vital to the parents and to the welfare of the child, it is important that the trial court in order to make as wise a decision as possible, should have as complete a picture of the whole background of the child as possible,— the financial condition of the parents, their interests, their morals, and their dispositions, as well as any other factor which

might aid the court in determining the probabilities of either parent furnishing a happy, harmonious home for the child.''

As was said in *Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268], where plaintiff relied on the proposition that as between parents adversely claiming custody, ''other things being equal, if the child is of tender years, it should be given to the mother,'' the court said:

''In determining whether other things are equal within the meaning of the above code section, the trial court is necessarily allowed a wide latitude in the exercise of its discretion. In the first instance it is for the trial court to determine, after considering all the evidence, how the best interests of the child will be subserved.''

The question is to be determined solely from the standpoint of the child, and the feelings and desires of the contesting parties are not to be considered, except insofar as they affect the best interests of the child. (*Taber* v. *Taber*, 209 Cal. 755, 756 [290 P. 36].)

In the instant case the trial court had before it the facts leading up to the separation of the parties, the evident abandonment by plaintiff of her children after her infatuation with H. Edwin Hue; her subsequent trip to Nevada to obtain a divorce, in which she did not ask for the custody of the children and in which she set forth the sole ground of mental cruelty to obtain her decree; the fact that both H. Edwin Hue and the plaintiff denied on the witness stand that there had been any improper relations between them, as opposed to the testimony of one of the witnesses and the defendant, to whom plaintiff had admitted having had ''an affair'' prior to the separation of the parties; the fact that plaintiff's own mother kept her from forcibly taking the child from the Pickford home. These facts and the evident emotional outburst of the plaintiff at the conclusion of her case were all facts and circumstances in support of the trial court's finding that the interests of the children would be best subserved by the award of custody to the defendant and we cannot hold, as a matter of law, that the trial court abused its discretion in the order made.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.