[Crim. No. 2273.   Third Dist.   July 13, 1951.]

In re JACQUELINE MILDRED KOSH, on Habeas Corpus.

Palmer & York for Petitioner.

Paul Golis for Respondent.

VAN DYKE, J.—This proceeding involves the custody of Kathleen Kosh, a girl child of the age of 2 years.  Her father, Russell Kosh, and her mother, Jacqueline, are husband and wife, and at the time of initiation of the proceedings with which we are concerned resided in Chicago.  They separated on July 16, 1950, and have since lived separate and apart.  On July 19th of that year Jacqueline commenced an action in the

Superior Court of Cook County, Illinois, against Russell, wherein she sought a decree of separate maintenance. The child was then in her care and she asked that a reasonable amount be awarded to her for its support and maintenance. On August 9th Russell entered his appearance in said action, but at that time filed no pleading therein, the document he filed reciting that he did thereby enter his appearance through his counsel. On August 14th Jacqueline, accompanied by Kathleen, departed from Illinois. On August 16th she arrived in California and she and the minor have been in this state ever since. On August 17th, acting through her counsel, she served in her maintenance action notice of motion to dismiss the same, noticing the motion for a future date. On the following day, and before the hearing of that motion, Russell filed in said action pleadings denominated a "Counter-Complaint for Divorce." Upon the hearing of the motion to dismiss, the court granted the same, but continued the case upon the counterclaim for divorce, ordering that Jacqueline answer the same within 30 days, though the record does not show that she was ever served with that counterclaim. She did not answer the same and on December 14th the Cook County court made an order awarding the custody of Kathleen to Russell.

On arriving in California, Jacqueline, accompanied by Kathleen, went directly to Calistoga in Napa County, where they were when the said order was made. On December 22d Jacqueline filed in the Superior Court for Napa County her petition for letters of guardianship upon the person of Kathleen. This petition alleged that Kathleen was a resident of Napa County; that petitioner was her mother; that the minor was at present with her and under her care and that the father, Russell, resided at a given address in Chicago; that the child had no guardian legally appointed by will or otherwise, and that she required the care and attention by some fit and proper person, which petitioner Jacqueline alleged herself to be. She prayed that she be appointed guardian of the person of the minor. Upon the filing of the petition for guardianship, the Napa County court ordered that notice of the hearing of the petition be posted at least 10 days before the date set for hearing and that further notice thereof be given Russell by mailing a copy of the notice of hearing, and copy of petition, to him at his Chicago address as given in the petition. The court set the hearing on the petition for January 19, 1951, and further ordered that pending the hearing the care, custody and control of the minor be awarded to Jacqueline. After

obtaining the Cook County decree, Russell came to California. On December 26th, after the initiation by Jacqueline of the guardianship proceedings in Napa County, he began proceedings in the Superior Court for Sonoma County to obtain possession of the minor. In that court he filed a petition for warrant in lieu of habeas corpus under section 1497 of the Penal Code. Therein he alleged that Jacqueline had removed the minor from the jurisdiction of the Cook County court "in defiance of said Court" and that she had secreted the minor in the county of Sonoma; that he was entitled to the care, custody and control of the minor by virtue of the Cook County decree; that Jacqueline and Jean Johnson, the mother of Jacqueline and the grandmother of Kathleen, had threatened to remove the minor from the jurisdiction of any court which might attempt to adjudicate her status; that Jacqueline had further threatened to carry the minor out of the county of Sonoma and out of the State of California and that he feared the minor would be so carried out of the state. Responsive to this application for warrant, the Sonoma County court issued its warrant as prayed for. The warrant was executed by the Sheriff of Sonoma County who took the minor from the grandmother. It appears that, while Jacqueline has throughout claimed to reside, since coming to California, in Calistoga and in Napa County, the home of her mother, Jean Johnson, lies just over the line dividing the two counties and is in Sonoma County. It is Jacqueline's contention that the minor was in her care and custody in Napa County and was merely being cared for by the grandmother over the line in Sonoma County when the warrant in lieu of habeas corpus was granted and executed by taking the minor into the custody of the Sonoma County court. After the execution of the warrant, the grandmother filed her return in the Sonoma County court, therein alleging that on December 27th, at the time the service of the warrant was made upon her, she had Kathleen in her possession and under her control by authority received from Jacqueline; that Jacqueline had custody and control of the minor pursuant to the order of the Napa County court made on December 22d in the guardianship proceedings. She denied that Jacqueline had removed Kathleen from Cook County in defiance of the court therein and alleged that Jacqueline and Kathleen left Illinois on August 14th and ever since the 16th of August had been residents of the State of California. She challenged the jurisdiction of the Cook County court to make its decree under the circumstances

and denied any threat to remove Kathleen from the jurisdiction of any court, denying also any threat to carry her out of the county of Sonoma, denying the existence of any conspiracy for such purposes. She alleged the commencement of the guardianship proceedings in Napa County. She challenged the jurisdiction of the Sonoma County court in that the child was in no danger as to its safety, morals or reasonable comfort, and alleged that it would not be removed from the jurisdiction of California's courts unless it be delivered into possession of Russell and he should take it away.

The record before us does not indicate that any traverse was filed to this return, but it does appear that the Sonoma County court proceeded to hear the matter as a proceeding in habeas corpus. However, Jacqueline did not appear in that proceeding as a party thereto, was not served with any process therein, nor was any effort made to bring her in as an interested party. The hearing, therefore, proceeded as between Russell, the minor's father, and Jean Johnson, the minor's grandmother. The mother did appear as a witness, but that does not make her a party to the proceedings, nor bind her so far as her interests are concerned by any order therein made. At the close of the hearing, the Sonoma County court declared itself bound by the Cook County decree and ordered that the infant be delivered into the custody of its father. It also declared that the proceedings in Napa County "appear as being wholly lacking in jurisdiction." This order was made on January 8th current, and the court granted a stay in the execution of its order. Thereupon Jacqueline filed in this court her petition for writ of habeas corpus, which writ was granted and the matter was heard here and submitted for decision after arguments and briefs.

We think the essential question to be answered here is this: Did the filing of the petition of Jacqueline for letters of guardianship in the Superior Court for Napa County vest exclusive jurisdiction in that court, so far as the courts of California be concerned, to determine the matter of custody of the minor? The answer must be in the affirmative.

It has often been held by our appellate courts that the existence in full force and effect of the decree of a court of another state does not oust the jurisdiction of appropriate California courts to entertain proceedings touching the custody of minors within the borders of this state. (*Sampsell* v. *Superior Court,* 32 Cal.2d 763, 780 [197 P.2d 739]; *Titcomb*

v. *Superior Court*, 220 Cal. 34, 39 [29 P.2d 206].) In the last cited case it was said:

". . . It must be conceded that although the Arizona divorce and custody decrees were in all respects valid, the courts of the state of California would nevertheless have jurisdiction upon the children thereafter becoming residents or inhabitants of this state to determine their custody in accordance with their best welfare. . . . It is of the inherent nature of custody decrees, whether entered in divorce proceedings or independently thereof, that they are not final and conclusive, but subject to modification in the state where rendered as circumstances change. Where children whose custody has been the subject of judicial inquiry in another state subsequently become residents or inhabitants of this state, they are subject to the supervisory jurisdiction and guardianship of this state, to be exercised for their protection. The paramount concern in awarding custody as between parents is the welfare of the child, who is not the property of his parents. If it appears that the circumstances upon which the prior order of another state is based have not changed, our courts, on principles of comity, may refuse to decree a change of custody, but the decree of the other state is never a bar to inquiry as to the best interests of the child."

In *Sampsell* v. *Superior Court, supra,* it was said, at page 778:

"There is authority for the proposition that courts of two or more states may have concurrent jurisdiction over the custody of a child. . . . In the interest of the child, there is no reason why the state where the child is actually living may not have jurisdiction to act to protect the child's welfare, and there is likewise no reason why other states should not also have jurisdiction. As stated by Justice Cardozo in *Finlay* v. *Finlay*, 240 N.Y. 429, 431 [148 N.E. 624, 40 A.L.R. 937], 'The jurisdiction of a State to regulate the custody of infants found within its territory does not depend upon the domicile of the parents. It has its origin in the protection that is due to the incompetent or helpless. . . . For this, the residence of the child suffices though the domicile be elsewhere. . . . But the limits of the jurisdiction are suggested by its origin. 'The residence of the child may not be used as a pretence for the adjudication of the status of parents whose domicile is elsewhere, nor for the definition of parental rights dependent upon status. . . .'

". . . If the jurisdiction of one state has been exercised

over the child, there is no reason why, if the welfare of the particular child is a matter of real concern to the courts of another state, those courts may not also have jurisdiction, which might be exercised in the interest of the child 'with respectful consideration to the prior determination of other courts similarly situated.' . . . In any event, there is no reason why courts of one state should not be able to ''assume with confidence that the courts of the other jurisdiction will act with wisdom and sincerity in all matters pertaining to the welfare of this child.' ''

The application of the foregoing rules to the decree of the Cook County court which is before us is apparent upon a consideration of its contents. Thus that court recited that Jacqueline had failed to file her answer to the countercomplaint of Russell, that she was in default and had ''fled from the State of Illinois'' and had taken and wilfully concealed the infant child of the parties, with intent to deprive Russell of ''his right to visit said child and support said child'' and with the further intent of depriving the Cook County court ''of the supervision and welfare of said child.'' Concluding that, therefore, Jacqueline stood in defiance of the Cook County court, it was ordered that the countercomplaint of Russell be taken as confessed against her and that he be awarded the care and custody of the child and retain the same until the further order of the court. It is not disputed, and indeed could not be disputed in view of the record here, that when Jacqueline came to California with the infant child she was under no restraint from the Cook County court and we know of no law that forbade her from departing from the state of her domicile if she desired to do so. We further know of no law that forbade her from taking the infant child with her in the absence of any judicial restraint against her doing so. The order of the Cook County court does not purport to be one which passes upon the ultimate question of which of the two parents should, for the best welfare of the child, have its care, custody and control.

The petition for guardianship filed by Jacqueline in Napa County properly invoked the exercise of that court's jurisdiction. It contained all of the allegations required by our statute (Prob. Code, § 1440), including the allegation that the minor and petitioner resided in Napa County and that the minor required the care and attention of a fit and proper person. Its jurisdiction having been so invoked, the Napa County court proceeded in the exercise thereof by ordering

appropriate notice to be given and setting a date for the hearing of Jacqueline's petition for letters. Its jurisdiction to proceed was complete and this jurisdiction included the power of determining the truth of each and all of the allegations of the petition, such as those of the residence of the mother and her minor daughter. (*Guardianship of Danneker,* 67 Cal. 643, 645 [8 P. 514].) Therein it was declared that the court first acquiring jurisdiction through the filing of an appropriate petition "had jurisdiction to hear and determine whether the minor was a resident of that city and county, and required a guardian, and whether the said Teresa was a proper person to be appointed." Continuing, the court said: "The question, then, is presented, could Michelson (instead of presenting the issue of residence and the other subjects involved to the Superior Court of the city and county of San Francisco), step over to Alameda County, obtain letters there, and thus oust the former court of jurisdiction to proceed? We think not." See, also, *Milani* v. *Superior Court,* 61 Cal.App.2d 463, 467 [143 P.2d 402, 935], wherein the court said: "Where several courts have concurrent jurisdiction over a certain type of proceeding, the first one to assume and exercise such jurisdiction in a particular case acquires an exclusive jurisdiction. Thereafter another court, though it might originally have taken jurisdiction, is wholly without power to interfere." This court in *In re Green,* 67 Cal.App. 504, 505 [226 P. 76], said:

"The question of whether petitioner herein is a fit and proper person to have the care and custody of the minor is in issue in the guardianship proceeding in the superior court of Sonoma County. Pending the determination of such issue by that court, this court will not interfere, by a writ of habeas corpus, with the custody of the minor."

In *Greene* v. *Superior Court,* 37 Cal.2d 307, 310 [231 P.2d 821], it was declared that:

"Ordinarily the superior court of the county of a minor's residence or temporary domicile has jurisdiction to appoint a guardian. (Prob. Code, § 1440.) . . .

"The rule making exclusive the jurisdiction first acquired is particularly apposite to prevent unseemly conflict between courts that might arise if they were free to make contradictory custody awards at the same time." (See, also, *Matter of Maginnis,* 162 Cal. 200, 206 [121 P. 723].)

When Jacqueline filed her petition in the Napa County court there was vested in that court full and exclusive jurisdiction to proceed to determine, so far as courts of California

be concerned, whether or not the jurisdictional facts asserted in the petition did, in fact, exist, and if it found that they did then to proceed further to declare what the courts of this state ought to decree as to the custody of the minor, its welfare considered. While it was proceeding in the regular exercise of its authority no other court in this state could interfere therewith.

We conclude that, insofar as matters of the custody of this minor were of concern to the courts of this state, the Superior Court for Napa County had exclusive jurisdiction and the Sonoma County court was without jurisdiction to determine those issues. This is not to say that the Sonoma County court, presented with an application for a warrant in lieu of habeas corpus which alleged that the minor was within the confines of the county of Sonoma and was in a situation of danger, did not have jurisdiction to order the minor brought before it for its protection, but it is to say that beyond that point it could not go in view of the existing exclusive jurisdiction of the Napa County court to determine what should thereafter be done in the matter of custody.

It is not necessary for us here to determine the claims and counterclaims made by the parties as to the validity of the Cook County decree or as to the effect which it should be given by the Napa County court. What we have said is based on an assumption, arguendo, of the validity of that decree. If the Napa County court decides that under the facts it has jurisdiction to proceed in the matter of the guardianship it will then proceed to determine what is for the best interest and welfare of the minor involved and its decree will speak as of the time it is rendered and declare what that court holds ought to be done relative to the minor's custody, considering all things presented to it, including the decree of the court of Cook County, if it be introduced.

What we have said indicates the proper disposition of this proceeding. We hold that the writ of this court was properly issued. We hold further that questions touching what should be done by the courts of this state concerning the care and custody of this minor ought to be determined in the Superior Court of Napa County, which first acquired jurisdiction. That court is vested with authority to make all necessary orders for the temporary custody of the minor until the hearing can be had upon the petition before it. It is not disputed here, and could not be, that when the mother filed her petition for letters of guardianship in the Napa County court she had the

actual care and custody of her daughter. That custody should be restored to her pending the guardianship proceedings, subject to such orders as the court therein may make.

It is ordered that the minor Kathleen Kosh be delivered into the custody of Jacqueline Kosh, her mother. (*In re Green, supra.*)

Adams, P. J., and Peek, J., concurred.