[Civ. No. 23052.   Second Dist., Div. One.   Aug. 14, 1958.]

JO ANN LEATHERS, Respondent, v. JACK O. LEATHERS, Appellant.

Walter C. Harbert and John J. Hall for Appellant.

Charles C. Montgomery, Jr., and M. S. Bernard for Respondent.

LILLIE, J.—Defendant father appeals from a pendente lite order awarding custody of two minor children to plaintiff mother.

The parties were married in 1946 and lived together in Paris, Illinois, until January 12, 1956, when plaintiff commenced an action for divorce in the Illinois court. Defendant filed his answer thereto and cross-complained for a divorce on grounds of desertion and adultery, asking for custody of their two minor children, a son born in 1947, and a daughter born in 1952. From marital separation in January until June 8, 1956, the children resided with defendant father in the family home in Illinois.

On June 8, 1956, plaintiff "by fraud and deceit, obtained the children from the custody of the Defendant, representing that she would return them the next day, but . . . secreted them" from him and since "has kept said minor children away from Defendant." (Exhibit A—Decree of Divorce, *Leathers* v. *Leathers,* No. 56S11476, Superior Court of Cook County, Illinois, entered June 10, 1957.) Shortly after taking them, plaintiff obtained from the Illinois court "by practicing a fraud upon the Court" an ex parte injunction enjoining and restraining defendant from taking the children from her custody, which injunction was later dissolved by the same court as "improvidently entered."

The trial of the Illinois divorce action on its merits was set for June 10, 1957. Plaintiff, by "extreme tactics" and by making "materially false statements" to the court, sought in various ways to prevent the cause from coming to trial. Her request for a further continuance was denied, and finally being unable to avoid trial, she "surreptitiously fled" to California in early June, 1957, bringing the two children with her. Immediately upon arrival, and on June 5, 1957, she filed an action for custody of the children in the Los Angeles County Superior Court in which an order to show cause was issued, asking for their custody pending the hearing on the merits.

Plaintiff also immediately filed another affidavit in the Illinois case, alleging illness and asking for a further continuance. The court denied the same and on June 10, 1957, the Illinois divorce action was heard on its merits in her absence, plaintiff having defaulted by leaving the state. The Illinois court, by decree of divorce (Exhibit A), granted to defendant on his cross-complaint a divorce on grounds of plaintiff's desertion and adultery, and awarded custody of the two minor children to defendant denying all rights of

visitation to plaintiff until further order of the court. After reciting plaintiff's false representations to the court, her immoral, adulterous and fraudulent conduct and that she is a woman of "adulterous disposition, bad moral character, irresponsible and reckless in her conduct without proper regard for decency, Courts, law and lacking in self-respect," the court found "She is totally unfit to be permitted the care, custody or control of the minor children, or to even be permitted visitation with them, except upon such terms and conditions as will insure their being protected"; and that defendant is a fit person to have their custody.

Defendant, having been served with plaintiff's California complaint for custody, filed an answer thereto and a cross-complaint setting up the Illinois decree and, for the first time learning the whereabouts of the children, filed in the Superior Court of Los Angeles County a petition for writ of habeas corpus seeking their physical custody and return under the Illinois order. The writ was issued August 2, 1957.

Plaintiff then filed an appeal from the Illinois decree which was affirmed by the Illinois Supreme Court on March 20, 1958.

The defendant's writ of habeas corpus and plaintiff's order to show cause were consolidated for hearing and heard on August 9, 1957. The trial judge discharged defendant's writ of habeas corpus, and on the plaintiff's order to show cause ordered that physical custody of the children remain in plaintiff pending trial of the main action. From the latter order defendant appeals.

At the hearing before the trial court an authenticated copy of the Illinois divorce decree entered June 10, 1957, was received in evidence as defendant's Exhibit A. (Under Illinois law, this decree became final upon its entry. *Jackson* v. *Jackson*, 294 Ill.App. 508 [14 N.E.2d 276].) The only witness was defendant, an engineer, who testified to his occupancy of the former marital home in Illinois in which the children resided prior to their removal by plaintiff, its accommodations, school and transportation facilities and his arrangements for a qualified housekeeper to care for the children. Plaintiff did not take the stand except when called by the trial judge to determine the whereabouts of the children. Nothing was offered by her in support of her order to show cause, although she had ample opportunity to testify and present whatever evidence she desired. She made no showing whatever of a change

of circumstances or conditions; she offered no evidence that she is now a fit and proper person to have custody of the minors; and made no proper or legally authorized attack directly or indirectly upon the Illinois decree for either fraud or want of jurisdiction.

This case very simply involves a woman who, seeking to avoid the jurisdiction of the court in Illinois, the marital and bona fide domicile of the minors, surreptitiously, without the knowledge and consent of the father and under an order fraudulently obtained, brought two minor children to California where she now hopes the court will look more favorably upon her request for legal custody.

The question before us is whether the trial court abused its discretion in refusing to give legal effect to the decree of the Illinois court and in permitting plaintiff under these circumstances to retain the custody of the minors without a showing of a change of circumstances or that she is now a fit person to care for them.

■ Without any question, the paramount concern of the court in custody proceedings is the welfare of the child. (*Puckett* v. *Puckett*, 21 Cal.2d 833 [136 P.2d 1], *Lerner* v. *Superior Court*, 38 Cal.2d 676 [242 P.2d 321].) However, in the case at bar the issue is complicated by the existence of an Illinois decree entered only two months prior to the order of the California court and awarding custody of the children to the defendant. ■ That the California courts have jurisdiction in the instant case is clear, particularly in view of *Sampsell* v. *Superior Court*, 32 Cal.2d 763 [197 P.2d 739]. This case held that in the interest of a minor's welfare, the California court, as the court of the child's present domicile, has subject matter jurisdiction over his custody, care and control, even though the court of another state had "concurrent jurisdiction." Our question here, however, is whether the California court should give effect to the foreign custody decree based upon "concurrent jurisdiction."

For some time our courts have been faced with the problem whether to give "full faith and credit" or "comity" to a sister state's decree and refuse to reexamine its merits, or to exercise their own discretion and protect the welfare of the child within their jurisdiction. The solutions have been as varied as human needs. Hesitant to base their decision to reexamine the merits of a foreign custody decree on lack of jurisdiction, they often chose to justify their rulings on the ground that a *change of circumstances* occurred since the

making of the foreign decree.   Such a finding appears in virtually all decisions refusing to give effect to a foreign decree. ██   This has resulted in the general rule now followed in California that while a custody decree of a sister state is enforceable, it may be reexamined for circumstances occurring after it was rendered.   It is based on the theory that a custody award is never final but subject to being changed at any time (Civ. Code, § 138; *Anthony* v. *Tarpley,* 45 Cal. App. 72 [187 P. 779]), and that consideration for a child's welfare precludes the settlement of a dispute between parents from becoming binding on their child. ██   The case of *Foster* v. *Foster,* 8 Cal.2d 719, at page 727 [68 P.2d 719], well states the rule: ". . . a decree of a court of one state having jurisdiction, relating to the custody of minor children is under the doctrine of comity prevailing among sister states and, subject of course to the right of the parties to show a change of circumstances or conditions, entitled to recognition in another state."

██   In the instant case, however, the record is silent as to any evidence—that plaintiff mother is a fit and proper person to have custody of the minors, the Illinois court not two months before having found her unfit by virtue of her bad moral character and neglect of her children; that between June 10, 1957, and August 9, 1957, conditions or circumstances have changed justifying a change of custody; or that defendant father is not still fit to take their custody under the order of the Illinois court.   Nor does the record show that either directly or indirectly plaintiff has sought to attack the Illinois decree on grounds of fraud or lack of jurisdiction, or on any other ground.   Her several questions of defendant on cross-examination concerning what he failed to tell the Illinois court concerning the house in which he resides amount to no proper attack on the court's order.   It also appears that plaintiff recognized the validity of the Illinois decree by appealing from it, on the merits, to the Supreme Court of Illinois.   In addition, the record before us discloses no findings of the trial court particularly with regard to change of circumstances, or fitness of plaintiff.   Indeed there appears to be no evidence to support the trial court's order.

However, the Supreme Court in the Foster case (*supra*) (in which it refused to modify a South Dakota decree) in discussing the necessity of change of circumstances, did indicate that "It is perhaps possible to conceive of a case" in which,

even in the absence of a change of circumstances "the welfare of the child might require that the previous order of custody be changed." (P. 728.) "However, such a case would be a most unusual one." (P. 729.) But because of the conduct of the plaintiff in bringing the children to California, we do not feel called upon to decide whether this case presents such an "unusual" situation as would permit a change of custody from the previous Illinois decree in the absence of a showing of change of circumstances.

It is well settled that our courts will recognize and enforce custody decrees of a sister state without reexamination of their merits regardless of change of conditions when there is misconduct or malfeasance on the part of the parent seeking such reexamination, by invoking the doctrine of "clean hands." This misconduct generally consists of defiantly leaving a sister state, usually the marital domicile, with the minor to avoid its jurisdiction and for the purpose of seeking redetermination of the issue in a more favorable forum. It appears from an analysis of the California authorities that in most cases in which the courts have refused to reexamine the custody decrees of a sister state the parent seeking reexamination was a fugitive from the state issuing such decree, or abducted the minor from another state to avoid the court's jurisdiction, or brought the child into the forum state in defiance of another state's order (*In re Livingston,* 108 Cal. App. 716 [292 P. 285]), or obtained or retained custody of the child by misrepresentation on occasion of a casual visit and brought him to the forum state. (*Foster* v. *Foster, supra,* 8 Cal.2d 719.) In the following cases a foreign custody decree was recognized and enforced against a parent who was in some way defying the decree or the jurisdiction of the court that issued it. (*Bowman* v. *Bowman,* 125 Cal.App. 602 [13 P.2d 1049, 14 P.2d 558]; *Guardianship of Cameron,* 66 Cal. App.2d 884 [153 P.2d 385]; *In re Kyle,* 77 Cal.App.2d 634 [176 P.2d 96]; *In re Dehning,* 135 Cal.App.2d 635 [287 P.2d 782]; *In re Bauman,* 82 Cal.App.2d 359 [186 P.2d 154]; *In re Memmi,* 80 Cal.App.2d 295 [181 P.2d 885]; *Guardianship of Simpson,* 87 Cal.App.2d 848 [197 P.2d 820].) Although the holding in the following cases was not based on the parents' conduct, the problem was discussed in *Lerner* v. *Superior Court,* 38 Cal.2d 676 [242 P.2d 321]; *In re Brown,* 90 Cal.App.2d 651 [203 P.2d 799]; *In re Swindall,* 90 Cal. App.2d 177 [202 P.2d 845]; *In re Kosh,* 105 Cal.App.2d 418 [233 P.2d 598]; *Brown* v. *Brown,* 104 Cal.App.2d 88 [230

P.2d 651]; *In re Lee's Guardianship,* 123 Cal.App.2d 882 [267 P.2d 847]. On the other hand, the element of malfeasance was usually absent in cases where the courts consented to use their independent discretion. Interestingly enough, the bulk of cases in which recognition of a decree of a sister state was refused, although there was no showing of changed circumstances, involved foreign decrees which attempted to affect custody *lawfully* held by a resident of the forum or a bona fide resident child. (*In re Inman,* 32 Cal.App.2d 130 [89 P.2d 421]; *Stout* v. *Pate,* 120 Cal.App.2d 699 [261 P.2d 788].)

Our analysis of the cases supports the conclusion that the petitioner's "clean hands" is a most important consideration in the exercise of judicial discretion in determining whether a foreign decree should be reexamined on its merits. (*Foster* v. *Foster, supra.*) The Foster case establishes the principle that in the interest of the welfare of the child, custody decrees of a sister state are subject to an independent reexamination by the California courts although this discretion will not usually be exercised where the parent seeking relief in the California courts has "unclean hands."

■ The record before us discloses that plaintiff herself chose the Illinois forum by commencing the action which resulted in the decree she now seeks to avoid; that upon separation from defendant she left the children with him in the marital home and six months later took them from him upon the representation she would return them the next day; that three weeks thereafter, through fraudulent representations to the Illinois court she obtained an order of custody and secreted the children from defendant; that on the evening of the hearing on the merits of her Illinois action, after failing by questionable means to obtain a continuance to further delay the trial and to avoid the court's order and jurisdiction, she fled the family domicile and surreptitiously brought the children to California where she immediately brought this custody proceeding.

Respondent consumes considerable time discussing a stipulation. Since it was at no time received in evidence or properly brought to the attention of the trial court and is not in the record before this court, we are compelled to ignore all reference thereto.

Besides finding no evidentiary support for the court's order under the doctrine of "clean hands" we conclude that the

trial court abused its discretion in failing to give recognition to the decree of the Illinois court.

For the foregoing reasons, the order granting custody pendente lite is reversed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied September 8, 1958.