Sylvia FENNER, Appellant,

v.

Denison BASSETT, Appellee.

No. 598.

Supreme Court of Alaska.

March 17, 1966.

Karl L. Walter, Jr., and Robert A. Parrish, Fairbanks, for appellant.

Millard F. Ingraham, Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

NESBETT, Chief Justice.

A California divorce decree awarded custody of the children of the parties herein to appellee with the reasonable right of visitation in appellant. Without the permission of the California court or of the appellee, appellant removed the children from California to Alaska and immediately filed suit in Alaska to obtain custody. The principal question raised on appeal is whether the trial court erred in refusing to assume jurisdiction of the custody suit.

The pertinent facts are that appellee, as plaintiff in a divorce action commenced in California, obtained an interlocutory decree by default on July 9, 1963. The decree approved a property settlement agreement between the parties dated May 31, 1963 which provided that appellee should have legal custody of the two adopted minor children, but giving appellant " * * the right of reasonable visitation of the children at all times and places."

Upon the motion of appellant, a final judgment of divorce was granted by the Superior Court for Los Angeles County on July 13, 1964. On December 30, 1964 appellant removed the children from California to Delta Junction, Alaska, without the knowledge or permission of the California court or of appellee. On December 31, 1964 appellant notified appellee by telegram that she had the children in Alaska and intended to file suit for custody.

On January 5, 1965 appellant's complaint for custody was filed in the superior court at Fairbanks and insofar as is pertinent alleged:

> The appellant was the proper person to have the care, custody and control of the children and that appellee was not the proper person to have the care, custody and control of the children.

Concurrently with the filing of the complaint, appellant filed an affidavit with the court which, insofar as is pertinent, stated:

> The facts of her marriage to and divorce from appellee;

> That appellant's understanding of the visitation provision of the decree was that it permitted her to visit the children at her place of residence wherever that place of residence might be and permitted her to institute legal proceedings to determine future custody of the children at her place of residence;

> That appellant was happily married to a licensed physician, practicing at Delta Junction;

> That appellant desired custody of the children and had prepared a satisfactory home for them;

> That because of the age of the children " * * * she is now the fit and proper person to have the care, custody and control of the said children * * * " and further; that because of the age of the children and for other reasons appellee was no longer the proper person to have the care, custody and control of the children.

A hearing was had on appellee's motion to dismiss on January 20, 1965. In a memorandum decision dated February 25, 1965

the trial judge found that the children had been brought to Alaska in contravention of the custody decree of the California court; that the Alaska court had jurisdiction of the subject matter of the dispute but that it refused to exercise its jurisdiction. The motion to dismiss was granted.

Relying on the authority of Clegg v. Abood [1] appellant argues that the superior court in Fairbanks had jurisdiction of the parties and the children and could not decline to exercise its jurisdiction to modify the California custody provision upon a showing of changed circumstances.

To support the trial court's refusal to exercise jurisdiction appellee relies upon the doctrine of State ex rel. Marthens v. Superior Court [2] and the fact that no change of circumstances was alleged or shown.

■ The facts before us are very similar to those in *Marthens*. Since we believe that the public policy aspect of the doctrine of that case is sound and applicable, we accordingly conclude that the trial court was correct in holding that it had jurisdiction and correct in refusing to exercise its jurisdiction.

In *Marthens* the children were removed from California to Washington contrary to a California custody decree. An action was filed in Washington to modify the California decree. The Supreme Court of Washington prohibited the Superior Court of that state from assuming jurisdiction on the following grounds:

(1) That Article 4, Sec. 1 of the Constitution of the United States, which states in part:

Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State

required that the custody provisions of a divorce decree of a sister state be given full effect in other states;

(2) That the minor children did not have a domicile in Washington, and

(3) That the complaint failed to allege any facts constituting a change of conditions since the entry of the decree in California which would warrant a Washington court to interfere with the California decree.

The public policy against assuming jurisdiction in this type case was expressed as follows:

As a practical matter, it would make the state of Washington and its courts a haven of refuge for residents of all other states of the Union who might receive an unfavorable decision in a divorce action depriving them of custody of their children. To so hold would place a premium upon the surreptitious and constant removal of children from their domiciles in neighboring states and would result in endless litigation in this state over the custody of minor children, when such custody had already been determined by the courts of the sister states.

■ *Marthens* recognized the well established rule that courts of the asylum state where the children are resident, may assume jurisdiction where there is a showing of change of conditions and circumstances arising since entry of a decree in a sister state determining custody. The court observed, however, that the only allegation in the pleading before it which was at all relevant to show a change of circumstances was the bare conclusion that the welfare of the children required the court to assume jurisdiction. The court pointed out that allegations of fact in a pleading concerning change affecting the health, schooling, social influence, housing, comfort, well being, general welfare or imminent danger to the children were typical of the type change in circumstances which might persuade a court to assume jurisdiction.[3]

---

1. 13 Alaska 187, 191 (D.Alaska 1951).

2. 25 Wash.2d 125, 169 P.2d 626 (1946).

3. Holdings similar to that in Marthens based on similar facts have been reached in other jurisdictions. See: Crocker v.

As in *Marthens,* appellant has not alleged a change in circumstances in her complaint or affidavit sufficient to warrant an Alaska court to assume jurisdiction under the circumstances. The only relevant allegation contained in the complaint was the statement that appellant was the proper person to have custody of the children and that appellee was not. This was only a conclusion. The only allegations of fact contained in her affidavit were that she was happily married to a physician, could provide an adequate home in Delta Junction; that because of the age of the children she was the fit and proper person to have custody and that appellee was not. Nothing in the foregoing allegations indicated that the circumstances of the children with appellee had deteriorated in the five months since the California decree was made final or that their circumstances would be improved if custody were changed to appellant. In short, there was no showing that the circumstances of the children required that an Alaska court assume jurisdiction to act for their protection or welfare.

We consider it significant that appellant voluntarily entered into the property settlement agreement in California which gave custody of the children to appellee, consented to a default entry of divorce placing the custody provisions into interlocutory effect, then a year later, on her own motion, caused the California court to enter a final judgment of divorce which had the effect of making final her consent to appellee's custody of the children. Instead of petitioning the California court for a change in custody while present in California, appellant removed the children from the jurisdiction of that court and from appellee's legal custody without notice or permission. Only five months had elapsed since appellant herself had caused the California court to enter its final decree awarding custody to appellee.

We do not consider the holding in Clegg v. Abood[4] as applicable to the facts of this case since the court specifically found in *Clegg* that the pleadings sufficiently alleged a change in circumstances. In fact, the court distinguished its facts from those in *Marthens* on that basis.

Appellant contends that it was error for the court to have dismissed the complaint without a hearing to determine whether or not circumstances had changed since entry of the California decree.

Civil Rule 12(d) is directly applicable to appellant's argument. This section provides that the defense of lack of jurisdiction, whether made in a pleading or by motion, shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination be deferred until trial.[5] Since this rule is similar to Fed.R. Civ.P. 12, federal authorities have been considered in its interpretation and have been found to be persuasive.

There appears to be little question but that the general rule in the federal courts is that determination of the question of jurisdiction on the pleadings, affidavit, counter-affidavits and other documentary evidence is the accepted practice.

Crocker, 122 Colo. 49, 219 P.2d 311 (1950); State v. Black, 239 Ala. 644, 196 So. 713 (1940); Application of Lorenz, 194 Or. 355, 241 P.2d 142, rehearing denied, 194 Or. 355, 242 P.2d 200 (1952).

4. 13 Alaska 187, 191 (D.Alaska 1951).

5. Civ.R. 12(d) states:
   (d) *Preliminary Hearings.* The defenses specifically enumerated (1)–(7) in subdivision (b) of this rule, whether made in a pleading or by motion, and the motion for judgment mentioned in subdivision (c) of this rule shall be heard and determined before trial on application of any party, unless the court orders that the hearing and determination thereof be deferred until the trial.
   Subsections 1 and 2 apply to:
   12(b) (1) lack of jurisdiction over the subject matter, 12(b) (2) lack of jurisdiction over the person.

In Smith v. Sperling[6] the trial court spent 15 days in hearings to determine facts upon which to decide the question of jurisdiction. The United States Supreme Court in a 5 to 4 decision reversed the judgment based upon the fully developed facts and ruled that the facts could and should have been determined from the allegations contained in the pleadings and the nature of the controversy.[7]

The motion to dismiss for lack of jurisdiction herein was filed January 13, 1965 along with a supporting four page memorandum. Appellant filed a four page memorandum opposing the motion to dismiss. No request was made to introduce oral testimony although appellant and the children were in the area of Fairbanks or Delta Junction at the time. In her memorandum appellant admits that no allegations of changed circumstances were made in her complaint. She argued that such allegations were not necessary, but that if they were necessary, leave to amend the complaint would be requested. No request to amend was ever made.

The fact is that contrary to the inference contained in appellant's argument, a hearing was held. The court had before it appellant's complaint and affidavit, appellee's lengthy petition for a writ of habeas corpus, copies of the interlocutory and final decree issued by the California court, a copy of the telegram from appellant to appellee advising that she had removed the children to Alaska and the briefs of counsel pro and con on the merits of the motion to dismiss. The transcript of the hearing on the motion at which both counsel argued and discussed the case with

the judge consists of 33 pages. Neither side objected to the hearing and determination of the motion on argument based upon the above record. Neither side requested a continuance or permission to call witnesses. At the conclusion of the hearing the court advised that the matter would be taken under advisement, whereupon counsel for appellant remarked, "Thank you, Your Honor, for being so patient."

▇ It is true that on three occasions during the hearing on the motion, counsel for appellant referred to the necessity of a hearing to determine facts. These were:

(1) a reference to the facts which would have to be found in order to determine whether or not there actually had been a change in circumstances;

(2) a reference to the facts which would have to be found before it could be determined whether appellant had violated the California custody decree by her removal of the children to Alaska and

(3) a statement by counsel that he did not think that the court could grant the motion to dismiss without a hearing, because all parties were before the court and there were "some changed circumstances to be shown to the court", and that he didn't think that without a hearing the court could grant the motion to dismiss.

None of the statements could be interpreted as being an objection to the hearing on jurisdiction then being held. The latter statement simply emphasizes counsel's unfamiliarity with the implications of the type of hearing then in progress. When

---

6. 354 U.S. 91, 77 S.Ct. 1112, 1 L.Ed.2d 1205 (1957).

7. See: Central Mexico Light & Power Co. v. Munch, 116 F.2d 85, 87 (2d Cir. 1940); Ramirez & Feraud Chili Co. v. Las Palmas Food Co., 146 F.Supp. 594, 597–598 (S.D.Cal.1956) aff'd, 245 F.2d 874, 875 (9th Cir. 1957) cert. denied, 355 U.S. 927, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958). See also, Carr v. Beverly Hills Corp., 237 F.2d 323, 325 (9th Cir. 1956)

cited by appellant, where the issue of jurisdiction was tried on affidavits and counter-affidavits. On appeal the court remarked that such a practice was contrary to the universal practice in federal courts, without citation of authority, but went on to hold that the parties acquiesced, without objection, and were bound by the trial court's finding on jurisdiction. This case was reversed pursuant to Smith v. Sperling in 354 U.S. 917, 77 S.Ct. 1375, 1 L.Ed.2d 1433 (1957).

all of the above statements are read in the context of appellant's counsel's entire argument it seems likely that what counsel desired was for the court to rule that it had jurisdiction and then order a full trial on the merits.

Appellant argues that she was denied due process of law by the court in granting the motion to dismiss without a hearing. She relies upon Article 1, Section 7 of the Alaska Constitution,[8] and the Fourteenth Amendment of the United States Constitution.[9]

Appellant points out that for a hearing to meet the standard for due process it must have been fair, appropriate and adequate and the participants must have had an opportunity to protect their rights and make a showing by evidence.

As has been mentioned, appellant received ample notice, and was accorded a full hearing of the type generally employed for the purpose of determining the question of jurisdiction; she was not restricted in the presentation of evidence; her brief in opposition to the motion was timely filed and exhaustively argued at the hearing. At the conclusion of the hearing the matter was taken under advisement. A written decision was not published until over a month later. No procedural constitutional right of due process was violated.[10]

In view of the foregoing we hold that no error was committed with respect to the type hearing held to determine the jurisdiction question.[11]

Appellant also claims that error was committed by the trial court in refusing to exercise jurisdiction on the ground that appellant lacked clean hands and in entering a finding that appellant lacked clean hands without first holding a hearing.

We have studied the trial court's memorandum opinion. While it does mention the equitable maxim of clean hands and refers to the case of Leathers v. Leathers,[12] it does not specifically find that appellant lacked clean hands, nor does it specifically base its holding on that maxim. Neither is it specific on the question of whether changed circumstances were sufficiently alleged, for that matter.

Although the memorandum opinion is equivocal in many respects, its conclusions are correct for the reasons we have stated. Since it is not necessary that we consider the question of clean hands in making a proper disposition of the case, we shall not do so.

The order of the trial court refusing to exercise jurisdiction and dismissing the complaint for custody is affirmed.

RABINOWITZ, Justice (dissenting).

Since my reading of the record differs from that of the majority, I have reached a different conclusion as to the proper disposition of this appeal.

The majority concludes that the trial court in its memorandum opinion did "not specifically find that appellant lacked clean hands." I am of the view that contrary to the majority's analysis the trial court specifically based its refusal to assume jurisdiction on the grounds of appellant's unclean hands. The trial court in its

8. The pertinent portion of Alaska Constitution, Art. 1, § 7 states:
No person shall be deprived of life, liberty, or property, without due process of law.

9. The pertinent portion thereof states:
* * * nor shall any State deprive any person of life, liberty, or property, without due process of law * * *

10. Dohany v. Rogers, 281 U.S. 362, 369, 50 S.Ct. 299, 74 L.Ed. 904, 912 (1930).

11. It should be noted that in Marthens, all of the facts upon which the issue of jurisdiction was decided were contained in the complaint, supplemented by affidavits pro and con; in Leathers v. Leathers, 162 Cal.App.2d 768, 328 P.2d 853, 855 (Dist.Ct.App.1958), in a petition for a writ of habeas corpus, an order to show cause and the testimony of one witness; in Clegg v. Abood in the complaint alone.

12. Supra note 11.

memorandum opinion of February 25, 1965, stated in part:

> The children are present in Alaska although their mother, the plaintiff, brought them here in contravention of the custody decree of a California divorce decree between the parties.[1]

After making the above statement, the trial court in its memorandum opinion further stated:

> However, the lack of clean hands is a most important consideration in the exercise of judicial discretion in determining whether a foreign decree should be re-examined on its merits.
>
> The plaintiff removed the children to Alaska without informing their legal guardian until she had de facto custody of the children in Alaska. *If there are changed circumstances, such should be litigated in California rather than the forum chosen by plaintiff.* (Emphasis furnished.)

I believe that the above portions of the trial court's memorandum opinion clearly demonstrate that the rationale of its decision to refrain from exercising jurisdiction was its conclusion that appellant lacked clean hands.

I am in agreement with the majority's adoption of the underlying public policy doctrine of the *Marthens* decision. In litigation involving decrees pertaining to the custody of the children, I believe that generally the paramount considera-tion of our courts should be that of the welfare of the children. I am of the further opinion that departure from this principle is only justified as a deterrent to child stealing and forum shopping on the part of an unsuccessful parent-litigation.[2]

It is on this very issue of whether or not appellant brought the children into Alaska in violation of the California decree and thus lacked clean hands that I would remand the matter to the lower court for a further hearing. In an affidavit filed in the court below, appellant asserted:

> That by virtue of the provisions of said document (a property settlement agreement between the parties and the final decree of July 13, 1964 entered by the California court) the affiant was entitled to reasonable visitation of said children at any time and any place; *and said provisions were understood by your affiant to permit her to visit the said children at her place of residence wherever that place of residence should be, and likewise, would serve to allow the institution of proper legal proceedings to determine the future custody of the said children at such place as she should reside.* (Emphasis furnished.)

In connection with the above portion of appellant's affidavit, it is pertinent to observe that appellee in his brief in this appeal states:

> There did appear to be a substantial dispute as to whether Appellant 'illegally,

1. The memorandum opinion of the trial court then states that the court has "subject matter jurisdiction as a court of equity" citing Clegg v. Abood, 13 Alaska 187 (D.Alaska 1951), which case distinguished State ex rel. Marthens v. Superior Court, 25 Wash.2d 125, 169 P.2d 626 (1946), on the grounds of changed circumstances.

2. See generally Ehrenzweig, Conflicts of Laws (1962) §§ 86–90, pp. 283 through 300. In regard to cases in the child stealing-forum shopping type of situation, Professor Ehrenzweig states at 293:
   > There is one type of case, however, in which deviation from this principle seems needed in the interest of both the child and society * * *. To encourage such scheming is clearly harmful particularly where the second court's jurisdiction has been obtained in bad faith. It is true that the parent's wrong by itself should not preclude a solution dictated by the child's interest, and many courts have so said. But, even without regard to any wrong done, 'stability of environment * * * in itself is an important factor in the welfare of the child.'

   See also Ratner, Legislative Resolution of the Interstate Child Custody Problem, 38 S.Cal.L.Rev. 183 (1965), which contains the text of a Proposed Uniform Child Custody Jurisdiction Act.

unlawfully and with malice aforethought, failed to return the minor children' to Appellee, * * * or whether she brought them to Alaska and instituted this action in good faith under her understanding of the Final Judgment of Divorce.[3]

I fail to see how this dispute concerning appellant's interpretation of the California property settlement agreement and custody decree could be resolved without a hearing. In my view (in light of the record), it was necessary that a hearing be held on this issue before the trial court could have determined the issue of clean hands adversely to appellant.[4]

I am of the further opinion that the majority's disposition of this case on the grounds of appellant's failure to allege changed circumstances is not warranted by the record. The record reflects that counsel for appellant requested leave to amend appellant's pleadings in the event the court deemed it necessary.[5] The trial court subsequently decided the matter on the basis of lack of clean hands and a majority of this court in turn disposes of the matter upon an analysis of appellant's pleadings in regard to changed circumstances. I hardly think that counsel for appellant can be criticized for his "unfamiliarity with the implications of the type of hearing then in progress" since this issue is one of first impression for this court.

For the reasons above stated, I would remand for further proceedings in conformity with the views expressed in this dissent.[6]

3. In his brief appellee also makes the following statement:
> The only matter about which there appeared to be a factual dispute was Appellant's understanding of the California Judgments.

4. I am not persuaded that the federal authorities relied on by the majority as to the type of hearing necessary to resolve a Rule 12 motion to dismiss on the basis of lack of jurisdiction are appropriate. It is a rare instance where a federal court would have occasion to pass on jurisdictional questions pertaining to custody decrees in this type of case. Cases involving welfare of children can be distinguished from typical federal litigation. In these cases, under certain circumstances, examination of the children and demeanor evaluation may well prove crucial to the proper disposition of jurisdictional questions.

5. In appellant's Statement in Opposition to Motion to Dismiss, it was stated in part:
> If an allegation is necessary for jurisdiction, plaintiff will ask leave to amend the complaint.

At the January 20, 1965, proceedings before the lower court, appellant's counsel stated:
> This issue is sufficiently brought out by the allegations as to custody and we notice that the defendant had no difficulty in going and finding cases on changed circumstances and things of that nature. We would ask the Court * * * if the Court feels there has to be some allegation made, we can make an allegation, move to amend the complaint and put in an allegation that there are certain changed circumstances.

Note: On two other occasions during the January 20, 1965, proceedings counsel for appellant made statements to the same effect.

6. I would also permit appellant to amend her pleadings in regard to change of circumstances in light of the majority's decision.