Charles O'MALLEY

v.

Michelle O'MALLEY.

Supreme Judicial Court of Maine.

May 21, 1975.

Lipman, Parks & Livinston, P. A., by John M. Parks, Sumner H. Lipman, Augusta, for plaintiff.

Smith & Stein by Gordon E. Stein, Hallowell, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

ARCHIBALD, Justice.

This is an appeal by the defendant from a Superior Court judgment in which the following mandate issued:

"IT IS HEREBY ORDERED THAT: Michelle M. O'Malley of Mount Vernon, County of Kennebec and State of Maine deliver and surrender custody of the two minors, Charles Armand O'Malley and Colleen Theresa O'Malley, to the Sheriff of Kennebec County or his duly appointed Deputy.

IT IS FURTHER ORDERED THAT: The Sheriff of Kennebec County or his duly appointed Deputy deliver custody and possession of said Children to Charles W. O'Malley of Hartford, Connecticut."

We deny the appeal.

Charles O'Malley (appellee), acting pursuant to 14 M.R.S.A. § 5510,[1] petitioned for a writ of habeas corpus for the purpose of regaining custody of his two minor children who at the time were residing in Maine with Michelle O'Malley (appellant).

Appellant seasonably answered, acknowledging her possession of the two children. She asserted, among other things, that she was a "fit and proper person to have the care and custody of both minor children" and that "there is a state interest in seeing that the custody is placed in the person who would ensure the best interest of the minor children." By a separate motion appellee requested the Court "to exercise its full equity powers, acting as parens patriae, and evaluate the best interest of the minor children."

It becomes clear that the jurisdiction of the Superior Court to hear and decide the issues raised arises (1) from the statute (§ 5510), since the litigants are the parents of the two minor children, the appellee having been awarded their custody by virtue of a divorce decree in the State of Connecticut, and (2) by its equity jurisdiction as parens patriae should the Court choose to utilize it in order that it might consider the best interests of the children and thus override the unqualified legal right to custody established by virtue of the divorce decree. Roussel v. State, 274 A.2d 909, n. 11 at 923 (Me.1971).

We summarize the facts.

The litigants were married in Connecticut on June 30, 1962 and two children were born of this marriage. Appellant instituted an action for divorce in the Superior Court, County of Hartford, State of Connecticut, on November 19, 1970, subsequent to which appellee filed a cross-complaint likewise seeking a divorce. On or about February 28, 1973, the divorce was heard and granted to the appellee on the cross-complaint. Although the appellant was not present at this hearing, she was represented by counsel.[2] The Justice who heard the divorce made specific findings and ruled that although the children were not then in the State of Connecticut, jurisdiction existed to enter an appropriate order concerning their custody, which was awarded to the appellee.

While this divorce was pending and prior to hearing thereon, appellee filed a petition in the Probate Court, District of Portland, State of Connecticut, seeking the removal of Michelle O'Malley as guardian of the persons of the two children and naming him as such guardian. The Probate Court received a comprehensive report from the Connecticut State Welfare Department on June 4, 1971, recommending that the appellee be appointed sole guardian of the minor children since such "would be in the best interests of the children." On July 14, 1971, an order was entered appointing Charles O'Malley as guardian of the person of the minors and removing Michelle O'Malley as such guardian.

For about nine months following the decree of the Probate Court the children actually resided in Connecticut with their paternal grandparents. Michelle O'Malley then surreptitiously took possession of the children at their school and brought them to Maine where they have since lived with her.

At the habeas hearing in Maine certified copies of both the Connecticut Probate and Superior Court judgments were made a

---

1. "§ 5510. Parent or guardian of minor may have writ

The parent or guardian of any minor imprisoned or restrained of his liberty shall be entitled to the writ of habeas corpus for him, if he would be entitled to it on his own application."

2. She testified at the hearing before the Justice below that her failure to appear was due to fear of possible contempt proceedings which might arise out of the method she adopted in removing the children from the State of Connecticut in violation of the decree of the Probate Court.

part of the record. Likewise included were welfare studies from the Connecticut State Welfare Department and the Maine Department of Health and Welfare. The Maine Welfare Department suggested custody be awarded to the mother, and an updated Connecticut State Welfare Department report considered the father an appropriate custodian.[3] At the hearing on the petition before us both litigants testified and the Justice interviewed the children in his chambers.

The Justice made extensive findings of fact and stated his conclusions of law thereon. We now summarize these conclusions of law as follows:

(1) Appellee established his legal right to the custody of the minor children by virtue of both the Probate decree and the divorce decree issued in the State of Connecticut.

(2) The Connecticut judgments were entitled to full faith and credit in the State of Maine and, as relating to custody, will not be altered unless changed circumstances and conditions require it.

(3) The Maine Court may properly exercise habeas corpus jurisdiction but, in its discretion, has the right to exercise equity powers and adjudicate changes in custody. However, appellant should not be the beneficiary of equitable relief since she openly and knowingly violated the decree of the Connecticut Court which gave custody of the children to [appellee].

(4) Although the Maine Court has discretion to deliver minor children to a third party without adjudicating a change in the

legal right to custody, the Court exercising habeas corpus jurisdiction does not have the legal right to change the custody decree.

(5) In concluding that the relief sought in the habeas corpus proceeding be granted and the children returned to the custody of the appellee, the Justice below reached the ultimate conclusion that such was in the best interest of all concerned.

### ISSUE I

Appellant urges that the Court "erred in not exercising its parens patriae authority and issuing an order consistent with the best interest of the children."

■ The Superior Court confronted with a case such as this may grant relief in one of several ways. It may (as was done in the instant case) exercise its habeas powers, recognize the petitioner's pre-existing legal right to custody, if properly established, and deliver possession of the minor to the legally entitled custodian. In the alternative, it can exercise its equity jurisdiction, acting as parens patriae, to evaluate the best interests of the child and adjudicate a change in the right to custody if such change is deemed appropriate. Roussel v. State, *supra.*

■ The appellant correctly contends that a court must give consideration to the propriety of exercising its equity jurisdiction if properly invoked by the pleadings.[4] In *Roussel* we stated in a footnote:

"The court will be subjected to a *duty* . . . of acting under its equity juris-

---

3. After removing herself to Maine Mrs. O'Malley instituted a divorce proceeding in the Maine District Court in Augusta, and the District Court Judge referred the "question of custody to the Department of Health and Welfare," resulting in the filing of the two reports. The Maine divorce proceedings were dismissed but the reports filed were available for consideration by the Justice below at the time of the habeas hearing.

4. In *Roussel* a pleading initiating a plenary civil action was held insufficient to require

the court to exercise its equity jurisdiction. In the instant case the appellant in a pleading entitled "Answer" requested the Court to deny the habeas petition, award custody to her and grant such other relief as is just and equitable. The appellee, in turn, filed a "Motion" requesting that the Court exercise its parens patriae authority.

We need not decide whether either pleading was sufficient to mandate that the lower court exercise its equity jurisdiction since it is our holding that the presiding Justice properly refused to grant equitable relief.

diction to adjudicate the change of legal right to custody if the respondent in the habeas corpus proceeding should file a *counter-petition* addressed to the original equity jurisdiction of the court as parens patriae."

274 A.2d, n. 11 at 923.

■ Of course, the right to have the issue *adjudicated* does not necessarily mandate that the equity jurisdiction of the court be utilized and the relief requested on the equitable theory be granted.

Other jurisdictions have held, when the party seeking equitable relief has knowingly removed the children from a foreign jurisdiction in contravention of an existing custody decree, that the Justice below may in his discretion refuse because of that party's contemptuous conduct to adjudicate a change in custody, significant changes in circumstances notwithstanding. Leathers v. Leathers, 162 Cal.App.2d 768, 328 P.2d 853 (1958); Anderson v. Anderson, 214 Kan. 387, 520 P.2d 1239 (1974); Clampitt v. Johnson, Okl., 359 P.2d 588 (1961). This rule is discretionary with the court and should be applied according to the circumstances of each case, taking care not to jeopardize the welfare of the minor child. Leathers v. Leathers, *supra*; Perrenoud v. Perrenoud, 206 Kan. 559, 480 P.2d 749 (1971); Staedler v. Staedler, 6 N.J. 380, 78 A.2d 896 (1951); B. v. S., 99 N.J.Super. 429, 240 A.2d 189 (1968).

The Justice below found that:

"Michelle O'Malley did contrary to an existing court decree take the children from Connecticut and bring them to Maine in May of 1972. Mrs. O'Malley should not be the beneficiary of equitable relief since she has openly and knowingly violated the decree of the Connecticut court which gave custody of the children to Charles W. O'Malley."

■ Additionally, the Justice determined that the welfare of the children would be adequately protected if they were returned into the physical custody of their father. In so doing, he had an opportunity to evaluate the environment offered in the homes of each of the parents and concluded that it was "in the best interest of all concerned" that the custody provisions of the Connecticut divorce be enforced. Since there was an adequate factual basis to support the conclusion reached by the Justice below, it would be inappropriate for us to re-evaluate the facts from a cold record in an effort to find error. In short, appellant has not demonstrated that the failure of the Justice below to exercise equity jurisdiction was error.

## ISSUE II

Appellant next contends that it was error to grant full faith and credit to the Connecticut Probate decree dated July 14, 1971, and the Connecticut divorce decree dated February 28, 1973. Appellant urges that foreign custody decrees, being subject to amendment and, therefore, not final, should not be given full faith and credit in a sister state. Additionally, she contends that since the Connecticut Superior Court lacked subject matter jurisdiction because the children were not then in the State of Connecticut, the judgment relating to custody lacks validity.

■ Article 4, § 1 of the United States Constitution requires the courts of this State to give full faith and credit to the judicial proceedings of our sister states. While it was once widely accepted that a modifiable decree was not subject to the strictures of full faith and credit, the majority of jurisdictions now hold to the contrary.[5] Miller v. Miller, 158 Conn. 217, 258 A.2d 89, cert. denied, 396 U.S. 940, 90

---

5. This does not preclude a lower court from exercising its equity jurisdiction in order to evaluate the best interest of the child. A foreign custody decree can always be modified to the same extent (changed circumstances)

as it could be in the rendering state. People of State of New York v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947); Miller v. Miller, *infra*.

S.Ct. 374, 24 L.Ed.2d 241 (1969); Rethorst v. Rethorst, 214 Md. 1, 133 A.2d 101 (1957); *see also* 35 A.L.R.3d 520.

Principles of full faith and credit, on the facts disclosed by this record, prevent appellant from collaterally attacking the jurisdiction of the Connecticut Superior Court.[6]

Appellant initiated the divorce proceedings in Connecticut, being both a resident of and domiciled in that state. The counterclaim on which the divorce was granted was filed as a result of action initiated by the appellant. At the hearing appellant's Connecticut counsel seasonably raised the issue of subject matter jurisdiction, and the Connecticut Superior Court specifically ruled that it had jurisdiction to render the divorce judgment in spite of the removal prior to hearing of the children from that State. There is nothing before us to indicate any basic unfairness in the manner in which the issue of jurisdiction was litigated.

A foreign "judgment is entitled to full faith and credit—even as to questions of jurisdiction—when the second court's inquiry discloses that those questions have been fully and fairly litigated [as we have indicated is the situation here] and finally decided in the court which rendered the original judgment." Durfee v. Duke, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186, 191 (1963). *See also* Sherrer v. Sherrer, 334 U.S. 343, 68 S.Ct. 1087, 92 L.Ed. 1429 (1948); Restatement (Second) of Conflicts of Law § 97 (1969). Since, given the facts above recited, the Connecticut judgment is not susceptible to collateral attack in the Maine Court, there is no merit in this contention.

### ISSUE III

Was it error for the Justice below to deny appellant's motion to include in the record on appeal a document captioned "Statement for inclusion in record when no stenographic report made available"? The purpose of this was to summarize the unreported discussion which the Justice below had with the two minor children in his chambers at the time of the hearing, at which time both children are said to have expressed a preference to remain with their mother in Maine.

On the record before us it is clear that appellant failed to comply with Rule 74(n), M.R.C.P., which provides:

"(n) Appeals When No Stenographic Report Was Made. In the event no stenographic report of the evidence or proceedings at a hearing or trial was made, the appellant may prepare a statement of the evidence or proceedings from the best available means, including his recollection, for use instead of a stenographic transcript. This statement shall be served on the appellee who may serve objections or propose amendments thereto within 10 days after service upon him. Thereupon the statement, with the objections or proposed amendments, shall be submitted to the court for settlement and approval and as settled and approved shall be included in the record on appeal."

The rule clearly requires that the statement "shall be served" so that the adverse party may object or propose amendments thereto. There is nothing in the record before us to indicate that such service was ever made. Assuming to the contrary, the rule next requires that the statement be submitted to the Court for "settlement and approval" and it is only when so "settled and approved" that it shall be included in the record. This was never done. The Justice, therefore, acted correctly when he denied the motion to in-

---

6. It is not necessary to discuss whether the probate decree is equally immunized from collateral attack. One valid judgment is suf-

ficient to uphold the lower court's award of custody.

clude in the record appellant's version of the in camera discussion with these two children.

### ISSUE IV

 Appellant has challenged as clearly erroneous other findings and conclusions made by the Justice below. We have reviewed them carefully and find no clear error, even though the Justice below may have used somewhat ambiguous language in stating his findings. We are satisfied that his ultimate legal conclusion was correct. Laferriere v. Paradis, 293 A.2d 526 (Me.1972); Lipman Bros. v. Hartford Accident & Indemnity Co., 149 Me. 199, 100 A.2d 246 (1953); In re Cope's Estate, 351 Pa. 514, 41 A.2d 617 (1945).

The entry is:

Appeal denied.

All Justices concurring.